A. Franklin Mahoney, J.
The plaintiff seeks an order, pursuant to CPLK. 3212, dismissing the answer and any defenses contained therein and directing judgment in its favor as a matter of law.
The defendant, Conerty Bontiac-Buick, Inc., entered into a written floor plan agreement with the plaintiff, dated September 9, 1964. By the terms of said agreement, Conerty granted to plaintiff a security interest in each item of inventory particularized in the schedules annexed to the 'September 9,1964 agreement and, generally, but not limited to, as per paragraph 1 of said agreement, in “motor vehicles and vehicles of all types, including specifically, ibut not by way of limitations: Automobiles, trucks, tractors and trailers, mobile homes, tires and tubes, and parts, accessories and equipment for any and all thereof.” Conerty also agreed to pay to the plaintiff, upon demand, the amount of each loan or advance made by the plaintiff to Conerty to finance the acquisition of such goods, including any future advances, if required. ¡The plaintiff perfected its security interest in the above-described collateral by filing a financing statement in the 'Saratoga County Clerk’s office, that being the county in which Conerty conducted its business, and by filing a financing statement in the /Secretary of State’s office on September 28, 1964. The financing statements were duly continued by the filing of continuation statements in the 'Saratoga County Clerk’s office and in the Secretary of State’s office on August 27, 1969 and August 28, 1969, respectively.
On April 26, 1971, by reason of business conducted between plaintiff and defendant Conerty under the terms of the aforedescribed floor plan arrangement, the latter became indebted to the plaintiff in the sum of $29,■021:22. On the same date a warrant in the amount of $30,639.42 was docketed in the office of the Saratoga County Clerk by the defendant, New York State Tax Commission, for sales and use taxes collected by Conerty and not turned over to the Tax Commission. Both by operation of law (Tax Law, § 1141) and by terms of the 1964 agreement, the docketing of the warrant was equivalent to an entry of judgment, constituting a default by Conerty pursuant to the terms of the /September 9, 1964 agreement. At this juncture, plaintiff considered Conerty to be, in all respects, in default and *313 that plaintiff had a contractual right to immediate possession of all the collateral encompassed within the floor plan arrangement. The State Tax Commission levied upon the property of the defendant Gonerty, including the cbllateral .subject to plaintiff’s security interest, and said collateral is presently in the possession of the Tax Commission.
The plaintiff, heretofore, commenced an action in replevin seeking to obtain the immediate possession of the said collateral. Special Term held that the action was one to determine- adverse claims to property seized under a tax warrant (CPLE 5239); that the proposed sale of the levied equipment by the Tax Commission should be stayed; that that part of plaintiff’s complaint which sought to recover money damages be dismissed without prejudice to the commencement of an action for damages against the Tax Commission in the Court of Claims; and, that the venue be changed to the County of Albany. Thereafter, the defendant Tax Commission served its verified answer and the defendant Gonerty failed to serve its answer and the time to do so has expired. The answer of the Tax Commission generally denies that its lien, or interest, is inferior and subordinate to the security interest of the plaintiff.
All of the above may be refined into two issues: (1) Does the description of the collateral in the financing statement, filed and timely renewed both in the Saratoga County Clerk’s office and in the office of the Secretary of State, sufficiently comply with the provisions of section 9-110 (description) of the Uniform Commercial Code so as to have .given sufficient notice (§ 9-402) to the defendant Tax Commission that the levied property, including mechanics’ tools and equipment and office supplies and equipment, was subject to a prior security interest? (2) Was plaintiff’s security interest broad enough to cover future advances to Gonerty via promissory notes and, thereby, immunize the balances due on those notes from attachment or levy pursuant to the State Tax Commission’s warrant?
As to the adequacy of the collateral description in the subject documents, it is the contention of the defendant Tax Commission that only those articles of personalty particularized in the financing statements are protected and that all mechanics ’ tools and equipment and office supplies and equipment, not specifically mentioned therein, are not covered by the financing statement and, therefore, the tax lien is superior as to those items, the defendant Tax Commission having filed a warrant and reduced those items to possession. In this connection, it should be noted that section 9-110 of the code, so far as pertinent herein, states: *314 *1 For the purposes of this Article any description of personal property * * * is sufficient whether or not it is specific if it reasonably identifies what is described.” Next, before the adequacy of collateral description can ‘be tested it must first be established whether the security interest of the plaintiff is enforceable. Subdivision (1) of section 9-204 of the code makes it clear that the agreement of the parties is only one element in the creation of a security interest. To create a security interest there must occur the other steps required under subdivision (1) of section 9-304: the secured party’s giving value and the debtor’s acquisition of rights in the collateral. Neither the security agreement nor the security interest created thereunder is necessarily enforceable; for even though value has been given, there will be no contract, and no enforceable security interest until subdivision (1) of section 9-203 of the code has been satisfied. That section of the code provides that “ a security interest is not enforceable against the debtor or third parties unless (a) the collateral is in the possession of the secured party; or (b) the debtor has signed a security agreement which contains a description of the collateral * * * In describing collateral, the word ‘ proceeds ’ is sufficient without further description to cover proceeds of any character.” In the case at bar, paragraph (b) of subdivision (1) of section 9-203 cited above is operative and raises the issue of adequacy of collateral description. Defendant Conerty signed a security agreement which contained a description of the collateral. The test, then, is the adequacy of that description.
It is to the security agreement that one must look to resolve the question of adequate collateral description, because it is the agreement, not the financing statement, that embodies the intention of the parties. The financing statement is designed merely to put creditors on notice that further inquiry is prudent. From this, it does not follow, as contended by the Tax 'Commission, that the court must confine its review to the description contained in paragraph ¡5 of the financing statement. Bather, the court must enlarge its view to encompass the agreement and all documents annexed thereto (Matter of Laminated Veneers Co. v. Bassin, 471 F. 2d 1124). • A fair reading of the inventory schedules annexed to the agreement and the omnibus clause of the agreement itself wherein it is recited that it is the intention of the parties that the goods to be covered include: 1 ‘ motor vehicles and vehicles of all types, including specifically, but not by way of limitations: Automobiles, trucks, tractors and trailers, mobile homes, tires and tubes, and parts, accessories and equip *315 ment for any and all thereof ’ ’, persuades me that the parties intended to include as collateral all equipment and tools required to operate an automobile retail dealership. The test of whether “ accessories and equipment for any and all thereof ” satisfies the sufficiency of description as prescribed by section 9-110 of the code, so as to cover materials related to and required in the conduct of the subject business, is whether the description does the job assigned to it, i.e., make possible the identification of the thing described. Our courts have refused to follow the holdings of cases decided pre-code, often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called [1] ‘ serial number ” test. Bather, the reasonableness of the identification should apply (see Official Comment, § 9-110, McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, p. 382). In my view, the phrase “ accessories and equipment for any and all thereof ’ ’, following, as it does, the particularized items one would expect to find in an inventory of an automobile agency, was meant to convey to those entitled to notice that all “ accessories ” and all “ equipment ” with a logical nexus to the operation of a retail automobile agency was covered by the security arrangement. This conclusion comports more readily with the provisions of section 9-110 than does its inapposite. Becognition must be given to the intent of the drafters of the code to cull out of the precode laws all of the old limiting and sometimes frustrating provisions that often were contradictory, depending on whether one was dealing with a chattel mortgage, a retail sales agreement or a vehicle installment sales contract. For example, given the facts herein, no one could argue that an individual purchaser of a new automobile from defendant Conerty would be under any obligation to search the records to see if Conerty had pledged its assets and, if so, if it were in default. It would be immaterial to such a purchaser and of no consequence, provided that Conerty’s secured creditor, plaintiff herein, after default, had. not taken the vehicle into its possession. On the other hand, one who obtained a lien against Conerty through legal or equitable proceedings, with either actual knowledge of the security interest or constructive notice given by filing, would take subject to it. The difference is based on the thrust of the code to protect the interests of secured creditors against lien creditors but not against buyers in due course. Similarly, it is the “code sense” via the provisions of section 9-110 to require that the description of collateral inform *316 the inquiring creditor that all “ equipment ” and “ accessories ” of the subject business are liened. The description need only inform, it need not educate. I find the description of the collateral herein to be adequate so as to cover in the mechanics’ tools and office equipment.
With respect to the issue of whether plaintiff’s security interest covers the balances due on two time notes, negotiated subsequent to the perfection of that interest, it is necessary to set out in chronological order the respective dates of the events bearing on this problem. The floor-plan arrangement (agreement) was dated September 9, 1964. Plaintiff filed a financing statement both in the Saratoga County Clerk’s office and the office of the Secretary of State on September 28, 1964. The requisite refilings for continuation in the above-identified offices were made on August 27 and August 28, 1969 respectively. Defendant Conerty gave its time note to plaintiff in the sum of $22,185 on March 22, 1971. Conerty gave a second time note to plaintiff in the amount of $6,000 on March 22, 1972. Defendant Tax Commission filed its warrant in the Saratoga County Clerk’s office on April 26, 1971. Next, it is helpful in resolving this issue to note that the agreement, dated September 9, 1964, committed the plaintiff to make future advances to Conerty if requested (Sept. 9, 1964 agreement, par. 4). This commitment obviates the necessity of discussing whether future advances came ahead of intervening interests only if the secured party has committed itself to make the advances.
The chronology recited above makes it abundantly clear that plaintiff perfected its security interest years before the Tax Commission, as a lien creditor, filed its warrant. There can be no doubt, therefore, that as to the proceeds of the March 22, 1971 note, the plaintiff takes priority (Uniform Commercial Code, § 9-301). As to the March 22, 1972 note for $6,000, consideration must be given to the appropriate provisions of article 9 of the code. A single filing may cover one security agreement, or many security agreements executed at various times throughout a maximum five-year period (§ 9-403). A single writing may create one security interest, or it may provide for a number of security interests separable as to the amount of the obligation or advance from time to time secured and separable as to the amount of the collateral from time to time covered. These security interests may “ attach ” and be “ perfected ” at different times.[1] Given, in the instant case, that *317 the plaintiff and Conerty agreed that plaintiff should have a security interest in the described collateral; that Conerty, as debtor, had rights in the collateral; and that plaintiff gave value (§ 9-204, subd. [1]), attention must then be transferred to subdivisions (3) and (5) of section 9-204. Subdivision' (5) specifically states ‘ ‘ obligations covered by a security agreement may include future advances or other value whéther or not the advances or value are given pursuant to commitment.” However, it should be noted that subdivision (5) simply permits the inclusion of future advances in security agreements, but does not specify the priority of the resulting security interests. To resolve the question of priority between competing security interests one must read the agreement and subdivision (5) of section 9-204 together. The subdivision authorizes the inclusion of a provision for future advances (so-called floating loans) in the agreement “whether or not the advances * * * are given pursuant to commitment.” Whether commitment by creditor is made in agreement is critical. One can hypothesize a factual situation wherein A and B sign a security agreement without a commitment for future advances. A files a financing statement and loans B $5,000. Later, C makes an advance to B for another $5,000 and perfects its interest. Still later A makes an additional loan of $5,000 to B, pursuant to its agreement. Does A have a security interest to the extent of $5,000 or $10,000? Clearly, since A did not commit itself to the second or future advance in its agreement with B, it has a secured interest to the extent of $5,000 only. Subdivisions (3) and (5) of section 9-204 make it clear, as to after-acquired property, that separate security interests are created as the debtor acquires new property, for a security interest cannot “ attach ” until- the debtor has “ rights ” in the collateral. Section 9-204 clearly contemplates that different parts of the collateral might be acquired, and separate security interests be created, at different times.
It would seem also that separate security interests may be created as to separate future advances. Section 9-204 says that no security interest is created until value is given. If, as with future advances, value is given at different times, it would appear that different interests of different values arise at different times. However, if in the security agreement, the creditor commits himself to future advances, he gives value to the full extent of all future advances when he becomes so obligated. Does this mean that a creditor can immunize himself against all subsequent creditors or lien holders merely by agree *318 ing to a future advance clause in a security agreement ? In my view, it does not. In fact, section 9-311 of the code makes it clear that the debtor may create junior liens in the same collateral, even though the creation of the junior lien may amount to a default under the agreement with the earlier secured creditor. This junior interest would be behind the amount advanced or committed for by the same secured creditor. Next, if the debtor, after creating security interest in his collateral, is conducting an on-going business, it is to be assumed he will pay junior creditors and lienors, including his tax obligations. If he does not, the filing of a warrant, in the case of delinquent taxes, puts him in default to his secured creditor and the taking of possession of the inventory halts the operation of the business. Finally, it can be stated that if a creditor commits himself to make future advances, the debtor would be under a contingent obligation to repay the sum for which the creditor is committed. Thus, from the filing of the financing statement the creditor would have a perfected security interest in the collateral to the extent of his commitment
In the case at bar, the plaintiff had perfected his security interest with respect to the inventory and the March 22, 1971 note before the tax warrant was filed. As to the inventory and that note, there can be no question as to plaintiff’s priority. The March 22, 1972 note, though dated after the filing of the warrant, was a future advance to which the plaintiff had committed itself in the agreement with Conerty, and is, therefore, protected against the lien of the Tax Commission.
Since Special Term has heretofore correctly determined that the within controversy is not an action but, rather, a proceeding to determine adverse claims pursuant to CPLR 5239, plaintiff’s motion for summary judgment pursuant to CPLR 3212 would not, normally, lie since summary motion relief is only available in actions. Proceedings are determined by hearing and subdivision (b) of CPLR 409 provides that at such a hearing “ The court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised ”. Such a hearing of a special proceeding is equivalent to a motion for a summary judgment and thus makes a motion for summary judgment unnecessary.
As a result of the hearing herein, and after reading the complaint[2], answer and papers of each side, the court summarily determines that plaintiff’s secured interests in defendant Con *319 erty’s inventory, including mechanics’ tools and equipment and office accessories and equipment, and in the time notes of March 22, 1971 and March 22, 1972, are superior to the defendant Tax Commission’s warrant and, therefore, entitled to priority. The defendant Tax Commission shall release the subject personal property, free of any liens or encumbrances, to the plaintiff. -

. Secured Transactions under UCC, vol. 1, p. 684 by Coogan, Hogan and Vagts.

. Complaint verified and given effect as plaintiff’s affidavit (CPLR 105, subd. [r]).