INTERSTATE STEEL COMPANY, Plaintiff-Appellant, *v.* RAMM MANU-FACTURING CORPORATION, Defendant.—(MANCHESTER BANK OF ST. LOUIS *et al.,* Claimants-Appellees.)—INTERSTATE STEEL COMPANY, Plaintiff, *v.* RAMM MANUFACTURING CORPORATION, Defendant.—(CIT-IZENS NATIONAL BANK OF PARIS, Claimant-Appellee; MANCHESTER BANK OF ST. LOUIS, a/k/a Commerce Manchester Bank, Claimant-Appellant.)

Fourth District   Nos. 17678, 17689 cons.

Opinion filed August 3, 1982.

Stephen L. Corn and Robert G. Grierson, both of Craig & Craig, of Mattoon, for appellant Interstate Steel Company.

Mary M. Bonacorsi, of Thompson & Mitchell, of East St. Louis, for appellant Manchester Bank of St. Louis.

Alfred R. Kreckman, Jr., of Massey, Anderson & Gibson, of Paris, for appellee Citizens National Bank of Paris.

Mary M. Bonacorsi, of Thompson & Mitchell, of St. Louis, Missouri, James M. Grant, of Brainard, Bower & Kramer, of Charleston, and Alfred H. Kreckman, Jr., of Massey, Anderson & Gibson, of Paris, for appellees Manchester Bank of St. Louis and Citizens National Bank of Paris.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

These consolidated appeals are taken by plaintiff, Interstate Steel Company, an Illinois corporation (Interstate), and claimant, Manchester Bank of St. Louis (Manchester), from orders of the circuit court of Edgar County, the final one of which was entered December 28, 1981. The case arises from proceedings ancillary to a judgment obtained by plaintiff against defendant, Ramm Manufacturing Corporation (Ramm), on September 15, 1976, in the sum of $984,966.

. On April 20, 1979, execution was ordered to issue against certain sums held as the proceeds from the sale of various personal assets of Ramm by claimant, Citizens National Bank of Paris, Illinois (Citizens). On the same day Citizens filed a claim alleging it was entitled to the proceeds. Subsequently, Manchester also filed a claim. Various hearings were held trying the rights of the claimants to the property. The circuit court ultimately ruled that Citizens was entitled to $11,556.74 and Manchester to $20,795.30. Interstate was granted no recovery.

Most of the significant facts are not disputed. Ramm was a corporation engaged in the manufacture and sale of grain bins in Paris, Illinois. Some of the components of the bins were manufactured by Ramm using equipment located at its plant near Paris and other components and accessories were purchased by Ramm. The grain bin

components and accessories were sold by Ramm as a disassembled package, to be assembled by others at the location selected by the customer.

On June 10, 1974, Ramm and Manchester entered into a security agreement granting Manchester a security interest in certain property. Subsequently, on September 11, 1974, Ramm entered into a security agreement with Citizens granting Citizens a security interest. Both security interests were perfected within a few days of execution by the filing of a financing statement. By early 1976, Ramm had defaulted on the underlying obligations of both security interest, owing Manchester $649,289.21 and Citizens $717,000. Manchester and Citizens agreed that chattels held by Citizens as collateral be sold with the proceeds standing in lieu of the chattels. The trials of right of property concerned these proceeds.

Clearly, whatever security interest Manchester had perfected had first priority because it had filed its financing statement first. Citizens was entitled only to the security interest it had perfected in proceeds from the sale of items not covered by Manchester's interest. Interstate, whose judgment lien was latest in perfection, was only entitled to proceeds from the sale of items not covered by either of the foregoing interests. The trial court awarded Manchester the proceeds from the sale of items of Ramm's steel inventory and awarded the rest of the proceeds to Citizens.

Interstate maintains on appeal that the court erred in awarding to Citizens the proceeds from certain items of inventory and equipment because these items were not properly described in Citizens' financing agreement with Ramm. Interstate also asserts error in the trial court's determination Manchester was entitled to proceeds from the sale of some sheet steel. Manchester argues its claim to the proceeds of items of "merchandise" was perfected prior to Citizens' claim thereto. Manchester also sets forth its entitlement to $3,507.34, which was obtained by the sale of products of Ramm's raw steel.

Citizens' security agreement states in part:

> "The undersigned, for value received, hereby mortgages to THE CITIZENS NATIONAL BANK OF PARIS, Paris, Illinois (hereinafter called the 'bank'), and hereby grants to the Bank a security interest in, the following property and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith (hereinafter collectively called the 'Goods')."

In the blank section following the above language was typed the following language:

"All merchandise, Furniture and Fixtures now or hereafter obtained and located at R. R. #6, Paris, Illinois 61944."

Interstate contends that under the language of the above agreement, the only equipment covered are those items used in connection with and subservient to merchandise, furniture, and fixtures, and not items of equipment used generally in the production of merchandise. The basis for Interstate's contention is that the word "equipment" is used in the same phrase with "accessories" and "parts" and is joined to those words with the word "and." Interstate claims "equipment" must be given a meaning restrictd by the words preceding it. Interstate's argument is similar to the rule of *ejusdem generis* which provides that often when general words follow particular words in a document, the general words are construed to include only things of the same kind as the particular words. (*Bullman v. City of Chicago* (1937), 367 Ill. 217, 10 N.E.2d 961.) However, the rule is not applicable when a contrary interest is evident. See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318.

Here, all the equiipment, whose proceeds are in dispute, was used in the production of merchandise and, in that way, was connected with the merchandise. The equipment had no connection with the merchandise except for being used to produce it. It is hard to conceive what would have been intended by the word "equipment" if its meaning was to be restricted to the type of objects that are similar to accessories or parts. We conclude that equipment used to produce the merchandise was sufficiently described in the security agreement (Ill. Rev. Stat. 1979, ch. 26, par. 9—110), and the trial court correctly so ruled.Accordingly, we need neither decide whether the equipment in question would, as a matter of law, be fixtures within the meaning of the agreement nor remand for a trial court finding on that question.

Interstate also contends Ramm's inventory was not encompassed by the term "merchandise" in Citizens' security agreement, claiming "merchandise" refers only to finished products held for resale and not parts sold as components of bins. However, according to the evidence, the items in dispute were to be sold as parts for unassembled bins to be put together by the purchaser and were in finished condition to be sold although not packaged.

Moreover, although "merchandise" is not defined under the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*) (Code), Citizens points out that it was defined in the Factors Lien Act (Ill. Rev. Stat. 1961, ch. 82, par. 103) as "materials, goods in process, and finished goods intended for sale, whether or not requiring further manufacturing or processing." The Factors Lien Act was

repealed by the Code in 1962, and this definition is included in the definition of inventory in the Code at section 9—109(4) (Ill. Rev.Stat. 1979, ch. 26, par. 9—109(4)). The comments to the section state:

> "The definition of 'inventory' expands the scope of the definition of 'merchandise' found in the pre—Code Factor's Lien Act by including goods held for lease or to be furnished under contracts of service as well as goods held for sale." (Ill. Ann. Stat., ch. 26, par. 9—109, Council Commentary, at 81 (Smith-Hurd 1974).)

The definition of merchandise here should at least be as encompassing as the Factors Lien Act. The items in question here were intended for sale and were reasonably identified by the word "merchandise."

The award to Manchester of the proceeds from sheet steel in Ramm's possession was based upon the terms of Manchester's security agreement which purported to cover Ramm's "inventory" which the document described as follows:

> "[G]oods, merchandise and other personal property now owned or hereafter acquired by the Borrower which are held for sale or lease *** and without limiting the foregoing definition the term 'inventory' includes all the Borrower's inventory of steel located in Paris, Illinois."

The words "steel located in Paris, Illinois" were typed on the preprinted form. Interstate contends that because Ramm's principal business was the manufacture and sale of steel grain bins, the definition of inventory in the security agreement would not include steel to be used in the manufacture of the bins, as Ramm did not own or acquire the steel for sale.

Interstate concedes that if the definition of inventory found in the Code had been used in the agreement, the steel would have been covered. The Code definition includes raw materials, work in process, and materials used or consumed in a business. Interstate asserts that Manchester must be bound by the more restrictive definition which they used, and the agreement only covers those items sold by Ramm as part of its business activity.

■ Although Ramm was not in the business of selling steel, in order to give effect to every term in the written contract, the steel involved here would be covered by the security agreement as the agreement specifically states that inventory includes "steel located in Paris, Illinois." There is no dispute over the fact that the items were steel and they were located in Paris. This interpretation is further strengthened because of the rule that the typed portion of an executed form is to be given greater significance than the printed por-

tion. The phrase "steel located in Paris, Illinois" was typed onto the preprinted form. We need not construe the agreement against Manchester, the drafter, because the intent of the parties can be determined.

Although Manchester was first to perfect its security interest, Manchester's claim to the proceeds from the sale of various items of "merchandise" awarded to Citizens was properly denied by the trial court because Manchester failed to describe those items in its financing statement. (Ill. Rev. Stat. 1979, ch. 26, par. 9—312(5)(a).) That statement described the property to which the lien was to attach as "steel inventory." The items involved in this claim consisted of steel products purchased by Ramm and held for sale as accessories to the bins. Manchester contends that because the items in question are made of steel, they are covered by the financing agreement. However, this interpretation of the phrase does not seem reasonable in view of the fact that Ramm did have sheets of steel in its inventory.

The purpose of a financing statement is to put creditors on notice that further inquiry is prudent. (*Marine Midland Bank-Eastern National Association v. Conerty Pontiac-Buick, Inc.* (1974), 77 Misc. 2d 311, 352 N.Y.S.2d 953.) Although it is clear that had Manchester used the word "inventory" alone in its financing statement, the items would have been covered, Manchester modified the word "inventory" to include only those items of "steel inventory." In order to give effect to the plain meaning of the phrase, we hold that Manchester's perfected security interest is limited to the sheets of steel awarded to them by the trial court. The phrase "steel inventory" does not reasonably identify the items in dispute and does not put a third party on notice that a security interest may exist in these items.

The trial court found the description in Manchester's financing statement was sufficient to cover the raw steel purchased by Ramm and "the product of that raw steel." Manchester contends that the trial court erroneously omitted the following items from its determination of what items were products of the raw steel:

| | |
|---|---|
| Channel lock flooring | $3,188.01 |
| 1 hog shed | 60.00 |
| 1 bin door | 50.00 |
| 1 small metal shed | 10.00 |
| 1 bin step | 6.83 |
| | $3,314.84 |

Citizens does not dispute the finding that the products of raw steel are covered under the financing statement. Evidence at trial showed

that these items were the product of the raw steel. As these items were covered by the financing statement, the proceeds of these items should be awarded to Manchester.

Citizens argues that if Manchester is awarded the proceeds from these items then Citizens should be awarded the proceeds from 9,050 pounds of steel ($905) which had been awarded to Manchester by the trial court.Testimony at trial showed that this steel was used by Ramm to make dies for its machines and was not used to manufacture other products for resale. Citizens contends that this steel should have been classified as Ramm's equipment, which was covered by Citizens' security agreement. Citizens, however, failed to file a notice of appeal in this issue and therefore has waived this claim.

The judgments of the trial court were proper except that, as we have explained, Manchester should have been awarded an additional sum of $3,314.84 and Citizens' award should have been less by that sum. To that extent the judgments appealed are reversed. Otherwise, they are affirmed. The case is remanded to the circuit court of Edgar County with directions that the award to Manchester be increased to the sum of $24,110.14 and the award to Citizens be reduced to $8,241.90.

Affirmed in part, reversed in part, remanded with directions.

WEBBER and LONDRIGAN, JJ., concur.