**In re DIXIE FUELS, INC., Debtor.**

**DRESSER INDUSTRIES, INC., Plaintiff,**

v.

**DIXIE FUELS, INC., Defendant.**

Bankruptcy No. 84–3086.
Adv. Nos. AP–84–0642, S–357.

United States Bankruptcy Court,
N.D. Alabama, W.D.

April 9, 1985.

---

Jan Eberhardt, Birmingham, Ala., for debtor.

Vernon Wells, Birmingham, Ala., for Dresser Industries, Inc.

**MEMORANDUM OF DECISION**

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter is before the Court on Plaintiff's MOTION SEEKING RELIEF FROM STAY AND COMPLAINT FOR DETINUE AND FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF. This issue presented in this case is whether the description of collateral in the security agreements and financing statements is sufficient to grant and perfect a security interest in a certain inventory of spare parts. The inquiry may be re-stated to be whether the words "along with all present and future attachments and accessories thereto and replacements and proceeds thereof ..." reasonably identifies the inventory of spare parts which are at issue in this case. *See* Ala.Code Section 7–9–110 (1975).

The Court notes at the outset that whether the issue is one of fact or one of law is not clear. *Compare First Nat'l Bank v. Smith*, 447 So.2d 705, 708 (Ala. 1984) (degree of specificity required is function of factual context—judgment on pleadings inappropriate) *with Bank of Cumming v. Chapman*, 245 Ga. 261, 264 S.E.2d 201 (1980) (sufficiency is question of law—identify question of fact). The Court must, however, apply Alabama law since state law ordinarily governs property and contract issues in bankruptcy. *See Matter of Patch Graphics*, 32 B.R. 373, 11 B.C.D. 889 (Bkrtcy.W.D.Wis.1983).[1] In *First Nat'l Bank v. Smith*, 447 So.2d 705 (Ala. 1984) the Alabama Supreme Court stated:

> Clearly, the degree of specificity required of a given description is, in part, a function of the factual context in which the documents were executed. The description in a security agreement or financing statement is sufficient if it serves its intended purpose. See official

---

1. Although the parties agreed in the Order Contract that it "shall be construed in accordance with the laws of the State of Ohio," *see* Plaintiff's Exhibit 9, this provision does not necessarily apply to the security agreement nor to the perfection issue. Further, even if the Court was required to apply Ohio law, the content of that law would be provided by the laws of the State of Alabama since this case concerns a purchase money security interest in goods which the parties understood would be kept in Alabama. *See* Ohio Rev.Code Ann. Section 1309.03(A)(3) (Baldwin 1984) (U.C.C. Section 9–103(1)(C))

comment to Section 7–9–110, Code of Alabama (1975). The description of the collateral in a security agreement is sufficient if it reasonably identifies the land so that it reflects the intent of the parties as to what collateral is covered. The description in the financing statement is sufficient if it serves to put others on notice of the secured party's claim. Although the description in question is scant at best, its sufficiency, i.e., whether it reasonably identifies the land on which the soybeans were grown, should not have been adjudicated on the basis of the pleadings alone.

*Id.* at 708. This passage clearly illustrates that under Alabama law, the sufficiency of a description is a factual determination. After a TRIAL held on March 12, 1985, and after having heard the evidence and having considered the same, the applicable law, and arguments of counsel, the Court hereby makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

Throughout 1983 Debtor/Defendant Dixie Fuels, Inc. (hereinafter called "Dixie") negotiated with the Marion Powers Shovel Division of Dresser Industries, Inc. (hereinafter called "Dresser") for the purchase of a Marion Type 7250 Static Power Conversion Diesel Electric Walking Dragline to be used in Dixie's coal mining operation. The sale, which was financed through C.I.T. Corporation (hereinafter called "C.I.T."), was consummated on or about January 31, 1984. At Dixie's insistence, the agreed upon purchase price of $3,530,000.00 included an inventory of $150,000.00 worth of mechanical and electrical spare parts. The testimony of Mr. Lawrence E. Schafer, Vice President in Charge of Sales for the Marion Power Shovel Division indicated that the maintenance of such an inventory was customary in the coal mining industry in order to minimize the "down-time" of the equipment. Mr. Schafer also testified that the dragline sold to Dixie was the only Model 7250 ever made by the Marion Power Shovel Division of Dresser Industries, Inc.

As noted above, C.I.T. financed Dixie's purchase of the dragline pursuant to installment notes dated January 31, 1984 and April 19, 1984 for $6,207,330.36 and $88,748.52 respectively.[2] Dresser guaranteed Dixie's obligations under these notes. Pursuant to security agreements which agreements which were also executed on the above-stated dates, Dixie granted to C.I.T. a security interest in the following collateral:

1. **GRANT OF SECURITY INTEREST; DESCRIPTION OF COLLATERAL.**

Debtor grants to Secured Party a security interest in the property described below, along with all present and future attachments and accessories thereto and replacements and proceeds thereof, including amounts payable under any insurance policy, all hereinafter referred to collectively as "collateral": Describe collateral fully including make, kind of unit, serial and model numbers and any other pertinent information.

> 1—New Marion Model 7250 Walking Dragline with 160 foot boom and bucket
>
> Dragline, S/N 23304
>
> Cummins VTA 1710–G–C2 diesel generator sets S/N [3]

C.I.T. perfected its security interest by filing a financing statement with the Secretary of State of Alabama pursuant to Alabama Code Section 7–9–401(1)(c) 1984 Supp. The following is the description of collateral listed on the financing statement which was filed on May 13, 1983:

> 1—New Marion Model 7250 Walking Dragline, with 160 foot boom and bucket, along with all present and future attachments and accessories thereto and replacements and proceeds thereof, includ-

---

**2.** The principal amounts financed in these notes were $3,690,000.00 and $52,950.00 respectively.

**3.** This language is found in the January 31, 1984 security agreement; the counterpart of this clause in the April 19, 1984 security agreement is not materially different.

ing (sic) amounts payable under any insurance policy.

Dragline S/N 23304

Cummins VTA 1710–G–C2 diesel generator sets S/N [4]

(Underlining indicates handwritten).

Dixie's first payment to C.I.T. was to have been made on July 31, 1984; but Dixie filed its Chapter 11 petition on June 12, 1984 and has made no payments on the debt owed to C.I.T. Upon Dixie's default, C.I.T. demanded payment from Dresser pursuant to its guaranty agreement; and on June 25, 1984, C.I.T. assigned to Dresser its rights, title and interest in the notes, the security agreements, the financing statements, and the collateral [5] after Dresser performed under its guaranty agreement.

On October 15, 1984, Dixie, as debtor-in-possession, filed a NOTICE OF INTENT TO ABANDON PROPERTY in which Dixie proposed to abandon the dragline and the diesel generator set. The property was, in fact, abandoned to Dresser when no objection to the proposed abandonment was filed.

In this suit, Dresser now seeks to recover the inventory of spare parts which was sold as part of Dixie's purchase of the Marion 7250. Dresser contends that it has a properly perfected security interest in the spare parts by virtue of the language in the security agreement and the financing statement that granted and perfected a security interest in four separate categories as follows: "all present and future [1] attachments and [2] accessories thereto and [3] replacements and [4] proceeds thereof....".

## CONCLUSIONS OF LAW AND APPLICATION TO FACTS

### A. GENERAL REQUIREMENT OF DESCRIPTION: SECTION 9–110

In discussing the description requirement, the Official Comment to each section makes reference to Alabama Code Section

7–9–110 (1975). That section states, "For the purposes of this article any descriptions of personal property ... is sufficient whether or not it is specific if it reasonably identifies what is described." Ala.Code Section 7–9–110 (1975).

### B. DESCRIPTION IN SECURITY AGREEMENT.

■ Section 7–9–203 of the Code of Alabama (1984 Supp.) provides in pertinent parts:

**Section 7–9–203. Attachment and enforceability of security interest; proceeds; formal requisites.**

(1) [A] security interest is not enforceable against the debtor of third parties with respect to the collateral and does not attach unless:

(a) [T]he debtor has signed a security agreement which contains a description of the collateral....

Ala.Code Section 7–9–203(1) (1984 Supp.). Thus, the security agreement must contain a sufficient description of the collateral before a security interest may attach. *See Matter of Delta Molded Prods., Inc.,* 416 F.Supp. 938, 942 (N.D.Ala.S.D.1976). *In re Modern Mix, Inc.,* 18 B.R. 746 (Bktcy.S.D. Ala.1982); *Gold Kist Inc. v. Farmers & Merchants Bank,* 425 So.2d 452 (Ala.1983).

### C. DESCRIPTION IN FINANCING STATEMENT.

In order for Dresser to have perfected its security interest, a financing statement must have been filed. *See* Ala.Code Section 7–9–302 (1984 Supp.). Alabama Code Section 7–9–402 (1984 Supp.) sets forth the requirements for a valid financing statement and provides in pertinent part:

**Section 7–9–402. Formal requisites of financing statement; amendments; mortgage as financing statement.**

(1) A financing statement is sufficient if it ... contains a statement indicating the

---

**4.** Another financing statement which was filed on April 25, 1985 contains a description which is not materially different.

**5.** Dresser perfected is assignment by filing two financing statements with the Secretary of State of Alabama pursuant to Alabama Code Section 7–9–401(1)(c) (1984 Supp.) on October 3, 1984.

types, or describing the items, of collateral.

Ala.Code Section 7–9–402(1) (1984 Supp.).

In *Associates Capital Corp. v. Bank of Huntsville*, 49 Ala.App. 523, 274 So.2d 80 (1973) the Alabama Court of Civil Appeals stated the following regarding the financing statement description requirement:

> The purpose of filing the financing statement is notice to any third party. The requirement of the description of the collateral is not for the purpose of informing such third party that the exact item which he is considering taking as security is already subject to a prior security interest, without further inquiry, though such could be the result of a full and complete serial number description. The requirement of "a description that reasonably identifies" is satisfied if it reasonably informs third parties that a certain identifiable item belonging to or in the possession of a debtor may be subject to a prior security interest and that further inquiry is necessary. Such is known as "notice filing." It merely places other parties on notice that there is need for investigation before taking as security for a loan items of the same type belonging to the debtor or which he intends to purchase.

*Id.* at 526, 274 So.2d at 80.

## APPLICATION OF LAW TO FACTS

Dresser contends that the description in the security agreements and in the financing statements was sufficient to grant and perfect a security interest in the inventory of spare parts since the parts are "accessories" to the Marion 7250. Dresser further argues that the parts qualify as "future attachments ... and replacements ..." Dixie argues in response that none of the terms "attachments", "accessories", or "replacements" describes the spare parts in-

ventory since the parts have not become affixed to the Marion 7250 or the generator.

### [1] ATTACHMENTS.

■ The Court rejects Dresser's contention that it is perfected because the parts are "future *attachments*". The Court finds that such a description is sufficient to grant and perfect a security interest in "attachments" once they have become *affixed* to the collateral. Since almost anything could be attached to the Marion 7250 at some time in the future, the Court must conclude that the term "future attachments" is too indefinite to describe parts which have not yet become affixed.

### [2] REPLACEMENTS.

"Replacements" must likewise be determined when the act of replacing is accomplished. The Court, therefore, rejects Dresser's contention that the parts inventory constitutes "future ... replacements." [6]

### [3] ACCESSORIES.

■ The Court determines that the spare parts at issue in this case are described by the term "accessories" to the Marion 7250 and the generator. In turning to a well recognized dictionary, "[o]ne rarely abandons the path of logic and common sense ... [to determine] the precise meaning of a term." *Quijano v. University Federal Credit Union*, 617 F.2d 129 (5th Cir.1980). *Webster's Third New International Dictionary* (1981) offers the following definition of the term "accessory" at page 11:

> 1a: a thing of secondary or subordinate importance ...: an adjunct or accompaniment ... b(1): an object or device that is not essential in itself but that adds to the beauty, convenience, or effectiveness of something else....

*Webster's* at 11.

Similarly, *Black's Law Dictionary* (5th Ed.1979) at page 13 states the following definition of the terms:

---

6. The Court notes that the term "replacements" could arguably be construed to mean a replacement of the Marion 7250 itself *i.e.* another dragline and not replacement parts. *See Jacklith v. Redstone Fed. Credit Union,* 463 F.Supp. 1134,

1137 (N.D.Ala.1979) (replacement for automobile would be another car). Because the parts inventory is not encompassed by the term "replacements", the Court need not address this issue.

Anything which is joined to another thing as an ornament, or to render it more perfect, or which accompanies it, or is connected with it as an incident, or as subordinate to it, or which belongs to or with it.

*Black's* at 13.

Based on the factual context of this case, *see First Nat'l Bank v. Smith*, 447 So.2d 705, 708 (Ala.1984), the Court finds that the term "accessories" "reasonably identifies" the spare parts inventory at issue in this case. *See* Ala.Code Section 7–9–110 (1975). In arriving at this determination, the Court is particularly persuaded by the fact that it was the debtor who strenuously negotiated for these parts as a part of a package deal to purchase the Marion 7250. The Court is also persuaded by the fact that the Marion 7250 was the only one of its kind and that, therefore, at least some of these parts cannot be used on other machinery. Further, Mr. Schafer testified that the maintenance of a parts inventory was customary in the industry in order to reduce the "downtime" of this very expensive equipment. Thus the spare parts inventory "adds to the ... effectiveness of [the Marion 7250]" *See Webster's* at 11. The parts also render [the Marion 7250] more perfect, ... accompanies it, ... [and] belongs with it." *See Black's* at 13. When all of these facts are considered together, the Court determines that Dixie clearly intended to grant a security interest in the spare parts.

The Court finds support for its determination that the term "accessories" "reasonably identifies" the spare parts inventory in two cases which have been cited by Dresser. In *United States v. First Nat'l Bank*, 470 F.2d 944 (8th Cir.1973), the Eighth Circuit Court of Appeals construed a security agreement which granted a security interest in "all farm equipment ... together with all replacements, substitutions, additions, and accessories thereto including ... [pipe and a pump with motor.]" In holding that this description was sufficient to grant a security interest in an irrigation system, the court stated:

However, we are not convinced that the requirement in Section 9–203, supra, that the collateral be described, is a devise for minimizing the amount of collateral a creditor can secure. That may be a laudable goal, but it is not encompassed by Section 9–110. As the Comment to that section .makes clear, the purpose of a description of collateral in a security agreement is only to evidence the agreement of the parties and therefore it need only "make possible the identification of the thing described."

*Id.* at 947. Thus, in the instant case, a third party would be led to inquire whether the parties had intended the spare parts to be "accessories" as the Court finds they did.

The Court has also been cited to the case of *Marine Midland Bank—Eastern Nat'l Ass'n v. Conerty Pontiac-Buick, Inc.*, 77 Misc.2d 311, 352 N.Y.S.2d 953 (1974) wherein the debtor was an automobile dealer. In discussing the term "accessories", the court stated:

In my view, the phrase "accessories and equipment for any and all thereof", following, as it does, the particularized items one would expect to find in an inventory of an automobile agency, was meant to convey to those entitled to notice that all "accessories" and all "equipment" with a logical nexus to the operation of a retail automobile agency was covered by the security arrangement. This conclusion comports more readily with the provisions of Section 9–110 than does its inapposite.

*Marine Midland*, 352 N.Y.S.2d at 959. Likewise, since maintaining an inventory of parts was customary in the industry, one would expect such an inventory to be used with the Marion 7250; the parts would, therefore, be "accessories."

## CONCLUSION

The consequence of Dresser's being properly perfected in light of the previous abandonment by the Debtor of the Marion 7250 is that Dresser's MOTION SEEKING RELIEF FROM STAY is due to be

GRANTED. A separate order will be entered consistent with this opinion.