**FULTON STATE BANK, an Illinois banking corporation, Plaintiff/Counterdefendant,**

v.

**DEUTZ–ALLIS CREDIT CORP., a Delaware corporation, Defendant/Counterplaintiff.**

**No. 88 C 20137.**

United States District Court, N.D. Illinois, W.D.

Nov. 30, 1988.

Thomas J. Potter, Morrison, Ill., for plaintiff/counterdefendant.

Scott M. Boyd, Rockford, Ill., for Deutz–Allis Credit Corp.

Bernard J. Natale, Rockford, Ill., for Kenneth G. Schipper, debtor.

## MEMORANDUM AND ORDER

ROSZKOWSKI, District Judge.

This action comes before the Court on cross-motions for summary judgment. On the basis of the briefs submitted, the supporting affidavits and deposition material, and for the reasons set forth below, the Court grants plaintiff Fulton State Bank's motion for summary judgment in part and grants defendant Deutz–Allis Credit Corporation's motion for summary judgment in part.

## BACKGROUND

On September 28, 1982, Kenneth Schipper purchased the following three pieces of farm equipment on an installment basis from an Allis Chalmers equipment dealer: an Allis Chalmers 1980 gleaner N5 combine, serial no. 2005; a 20 foot grain platform, serial no. N–F 06075N; and a 438 corn head, serial no. 3040. The grain platform and the corn head are attachments for the combine. The installment contract granted a purchase money security interest to the dealer. The PMSI was not perfected within the twenty-day period provided for in the Uniform Commercial Code § 9–312(4). This installment contract was subsequently assigned to Allis–Chalmers Credit Corporation (now Deutz–Allis Credit Corp.). On October 1, 1982, Kenneth Schipper received delivery of the combine, grain platform and corn head. On February 18, 1983, plaintiff Fulton State Bank took a financial statement from Kenneth Schipper. That financial statement, made out by Fulton State Bank's vice-president and chief loan officer, Mr. Faber, showed that on the date of the financial statement Mr. Schipper owed "A–C Credit Corp." approximately $35,000.00 for the combine and attachments. While the date of the financial statement is not clear, the record reflects the filing of a Uniform Commercial Code Form UCC–1 Financing Statement dated March 9, 1982 in Rock Island County, Illinois. That financing statement covered "all grain and machinery now owned and hereafter acquired."

Subsequently, in March, 1983, Fulton State Bank loaned Mr. Schipper money for purposes unrelated to the farm machinery. Fulton State Bank took a security agreement for the loan listing as collateral the following items:

"1980 Gleaner N–5 Combine serial # 2000–5, 1975 Int. 8 row corn planter, 1978 AC 7080 tractor serial # 3059 and AC 7000, 1978 serial # 4648."

That security agreement had as its inception date March 1, 1983. Fulton State Bank filed a Uniform Commercial Code Form UCC–1 Financing Statement on April 5, 1983 in Whiteside County, Illinois again naming Kenneth Schipper as the debtor and again covering "all grain and machinery now owned and hereafter acquired."

On April 25, 1983, following Fulton State Bank's UCC filing, Allis Chalmers Credit Corp., through the assignor Hatzer & Nordstrom Equipment Company, filed a Uniform Commercial Code Form UCC–1 Financing Statement in Whiteside County, Illinois, securing their interest in the following:

"Allis Chalmers gleaner N5 combine S.N. 2005 20 ft. grain platform S.N. N–F 06075N 438 corn head S.N. 3040"

Subsequent to all these events, Mr. Schipper filed for relief in the United States Bankruptcy Court, Northern District of Illinois, Western Division. Because this action no longer involves the debtor, Bankruptcy Judge Richard N. DeGunther has transferred the dispute between the creditors to the United States District Court for lack of jurisdiction.

Deutz–Allis Credit Corp. (successor in interest to Allis Chalmers Credit Corp.) and Fulton State Bank have filed cross-motions for summary judgment both claiming a superior right in the combine, grain platform and corn head.

### DISCUSSION

The Court will not grant any summary judgment unless all of the pleadings, briefs and supporting documents submitted indicate that there is no material question of fact and that one party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–54, 106 S.Ct. 2505, 2511–13, 91 L.Ed.2d 202 (1986). Once the moving party has stated that a fact is not in question, the burden shifts to the non-moving party to demonstrate that there is some question of fact or to contradict the fact and bring it into question. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

As a preliminary threshold matter, the Court finds that there are no outstanding issues of material fact which remain disputed despite the party's failure to file with this Court supporting memoranda pursuant to Rule 12(e) and Rule 12(f) of the General Rules of the United States District Court for the Northern District of Illinois.

The question presented in the instant case appears to be quite simple: Which party to this action has a priority interest in the farm equipment? The answer, however, requires some extended discussion.

### I. UNIFORM COMMERCIAL CODE § 9–401(2)

The Uniform Commercial Code ("U.C.C.") has a fairly detailed but straightforward procedure, set out in Article 9, for perfecting a security interest. Article 9 has been adopted in Illinois by statute. *Ill.Rev.Stat.* ch. 26, para. 9–101 *et seq.* (1974).

Section 9–302(1) of the U.C.C. states that "[a] financing statement *must* be filed to perfect all security interests" with certain enumerated exceptions. (emphasis added). None of those exceptions are applicable to equipment unless the equipment is "in possession of the secured party." That is not the case here.

■ Defendant-counterplaintiff Deutz–Allis Credit Corp. urges, however, that an exception to the filing requirements of U.C.C. § 9–302(1) is provided for in U.C.C. § 9–401(2) which states:

A filing which is made in good faith *in an improper place or not in all of the places required* by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this Article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

*Ill.Rev.Stat.* ch. 26, para. 9–401(2) (1974) (emphasis added). The fatal flaw in the reliance by Deutz–Allis on this code section is that § 9–401(2) presupposes some timely filing or perfection of a financial statement somewhere with respect to the disputed collateral. In the present case, however, Deutz–Allis' Memorandum in Support of Summary Judgment admits, in ¶¶ 9–10, that the Fulton State Bank filed a U.C.C.–1 Financing Statement on April 5, 1983, and that Deutz–Allis (through its assignor Hat-

zer & Nordstrom Equipment Company) did not file a U.C.C.–1 Financing Statement until April 25, 1983. Therefore, this is not a case where there was merely a filing "in an improper place or not in all the places required." Rather, this case involves a *late* filing for which U.C.C. § 9–401(2) provides no remedy and U.C.C. § 9–302(1) provides no exceptions.

Further, because the provisions of the 20–day "window" in U.C.C. § 9–312(4) have not been complied with, the terms of U.C.C. § 9–312(5)(a) stating that "[c]onflicting security interests rank according to priority in time of filing or perfection" is controlling in the present case. Simply stated, the applicable rule here is "first in time, first in right." In the instant case, the fact that Deutz–Allis Credit Corp. never filed a timely U.C.C.–1 Financing Statement at all is dispositive of this issue. Therefore, this Court holds that on the issue of the applicability of the priority provisions of U.C.C. § 9–401(2), defendant-counterplaintiff Deutz–Allis Credit Corporation's Motion for Summary Judgment is denied.

## II. SUFFICIENCY OF DESCRIPTION

The second argument advanced by Deutz–Allis in favor of their Motion for Summary Judgment is that the Financing Statement filed by Fulton State Bank on April 5, 1983 was insufficient to perfect Fulton State Bank's interest in the combine, grain platform and corn head through the use on the Financing Statement of the overbroad term "machinery" as opposed to use of the U.C.C. term "equipment."

In many situations, the manner in which the goods are classified under the U.C.C. will determine the rights and priorities of creditors and third-party creditors. *See Ill. Rev.Stat.* ch. 26, para. 9–109, Illinois Code Comment (1974). "Goods," defined in § 9–105(1)(h) of the U.C.C., are classified as either consumer goods, equipment, farm products or inventory. "Equipment" is defined as goods which are *"used or bought for use primarily in business (including farming or a profession) or by a debtor who is a non-profit organization or a government subdivision or agency or if the*

goods are not included in the definitions of inventory, farm products or consumer goods ..." *Ill.Rev.Stat.* ch. 26, para. 9–109(2) (1974) (emphasis added).

Three code sections are instructive: (1) U.C.C. § 9–110 states that "[f]or the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." *Ill.Rev.Stat.* ch. 26, para. 9–110 (1983); (2) U.C.C. § 9–402(1) states that "[a] financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor *and contains a statement indicating the types, or describing the items, of collateral." Ill.Rev.Stat.* ch. 26, para. 9–402(1) (1983) (emphasis added); and (3), U.C.C. § 9–402(8) states that "[a] financing statement *substantially complying* with the requirements of this Section is effective *even though it contains minor errors which are not seriously misleading." Ill. Rev.Stat.* ch. 26, para. 9–402(8) (1983) (emphasis added).

The determination of what constitutes a sufficient description to comply with the various Illinois UCC provisions appears to be a case of first impression in Illinois, or at least a case with very little guidance from Illinois case law. No Illinois court decision has been cited to or found by this Court which sets out a general rule of construction in this area. This is coupled with the fact that various jurisdictions have adopted different approaches and analyses for looking at identical UCC provisions. In addition, the general rule adopted will oftentimes be determinative in a particular case. Therefore, before arriving at a decision, this Court is compelled to survey some of the relevant case law from Illinois as well as from other jurisdictions.

A. *Interstate Steel Co. v. Ramm Mfg. Corp.*

*Interstate Steel Co. v. Ramm Mfg. Corp.,* 108 Ill.App.3d 404, 64 Ill.Dec. 62,

438 N.E.2d 1381 (4th Dist.1982), is an Illinois case where the facts most closely approximate the *type* of dispute involved in the instant litigation. *Interstate Steel* involved two creditor banks both vying for some steel formerly owned by the debtor Ramm Mfg. Corp. The relevant dispute centered around two security agreements and questioned whether the language in either agreement covered the disputed sheets of steel. Citizen's National Bank had a security agreement which stated:

> The undersigned, for value received, hereby mortgages to THE CITIZENS NATIONAL BANK OF PARIS, Paris, Illinois (hereinafter called the 'Bank'), and hereby grants to the Bank a security interest in, the following property and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith.... *All merchandise, furniture and fixutes* now or hereafter obtained and located at R.R. # 6, Paris, Illinois 61944.

*Interstate Steel,* 108 Ill.App.3d at 406, 64 Ill.Dec. at 64, 438 N.E.2d at 1383 (emphasis added). The security agreement held by Manchester Bank of St. Louis covering inventory described that term as follows:

> [G]oods, merchandise and other personal property now owned or hereafter acquired* by the Borrower which are held for sale or lease * * * *and without limited the foregoing definition the term 'inventory' includes all the Borrower's inventory of steel* located in Paris, Illinois.

*Interstate Steel,* 108 Ill.App.3d at 407, 64 Ill.Dec. at 65, 438 N.E.2d at 1384 (emphasis added).

In making its determination, the Illinois Appellate Court for the Fourth District stated that the "purpose of a financing statement is to put creditors on notice that further inquiry is prudent." *Interstate Steel,* 108 Ill.App.3d at 409, 64 Ill.Dec. at 66, 438 N.E.2d at 1385. *citing Marine Midland Bank–Eastern National Association v. Coverty Pontiac-Buick, Inc.,* 77 Misc.2d 311, 352 N.Y.S.2d 953 (1974).

However, there is one particularly problematic aspect of the appellate court's reliance on the *Marine Midland Bank* language, incidentally an Albany County, New York state trial court case. The issue presented in the pertinent part of that opinion was whether the language used in a security agreement or that used in a financing statement controlled their decision on the adequacy of the description of the collateral. The *entire* pertinent portion of the *Marine Midland Bank* opinion reads as follows:

> It is to the security agreement that one must look to resolve the question of adequate collateral description, because it is the agreement, not the financing statement, that embodies the intention of the parties. The financing statement is designed merely to put creditors on notice that further inquiry is prudent. From this, it does not follow, as contended by the Tax Commission, that the Court must confine its review to the description contained in Paragraph No. 5 of the financing statement. Rather, the Court must enlarge its view to encompass the agreement and all documents annexed thereto....

*Marine Midland Bank,* 77 Misc.2d 311, 313–15, 352 N.Y.S.2d 953, 958–59. Therefore, the New York case relied upon by the Illinois Appellate Court really stands for the widely held proposition that as between a financing statement and a security agreement, the purpose of the financing statement is to provide notice to creditors—and that a creditor cannot enlarge the scope of the collateral covered by a security agreement by describing additional or different collateral in a financing statement. In addition, in reaching its decision, the Illinois Appellate Court did not apply this relatively liberal standard to determine whether Manchester's financing statement properly described the disputed steel products. Instead, the court took a narrow view of the literal language in the financing statement. In fact, the court went as far as to state that "had Manchester used the word 'inventory' alone in its financing statement, the items would have been covered, Manchester modified the word 'inventory' to include only those items of 'steel inventory.' " *Interstate Steel,* 108 Ill.App.3d at

409, 64 Ill.Dec. at 66, 438 N.E.2d at 1385. While this Court finds that the decision in the present case ultimately rests on whether the language contained in a security agreement or that contained in a financing statement will control, that does not make the rule enunciated in *Interstate Steel* any more persuasive, and does not save the appellate court's erroneous citation to the *Marine Midland Bank* case.

If anything, the *Interstate Steel* decision injects more confusion than certainty into the law of Illinois as the opinion sets out a broad liberal standard for description in a financing statement, and then fails to apply that standard or explain its scope and applicability. This appears to be the closest the Illinois courts have come to identifying a rule applicable in the instant case. One reason for the scarcity of Illinois case law may well be that most of these types of cases are likely to be decided in, or transferred from, the federal bankruptcy courts. Therefore, we may find the answer, or at least some meaningful guidance, in some of the reported federal decisions.

B. *In re Werth: First National Bank of Wakeeney v. Baar*

Defendant has cited to *In re Werth: First National Bank of Wakeeney v. Barr*, 443 F.Supp. 738 (D.Kan.1977), in support of the proposition that the term "machinery" in the present case is insufficient to describe the three pieces of farm equipment at issue. In *In re Werth*, the court held that the term "equipment" was insufficient to describe various pieces of farm machinery. The district court in that case properly based its decision solely on the controlling decisions of the Tenth Circuit. *In re Werth*, 443 F.Supp. at 740. The court's holding then rested on its reading of the particular language in the Uniform Commercial Code §§ 9–110, 9–402 and the Comments thereto. In particular, the court noted that the language in UCC § 9–402 stating that "a financing statement is sufficient if it ... contains a statement indicating the types, or describing the items, of collateral" should be read narrowly mandating that a financing statement describe, with some degree of particularity,

the items and types of collateral which are being covered by the statement. While the identical language of UCC § 9–402 has been adopted in Kansas and in Illinois, the Illinois courts do not appear to have adopted this restrictive a view of the description requirements for a financing statement. In fact, the Seventh Circuit seems to have taken quite the contrary view in *In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592 (7th Cir.1986). Because this Court does find meaningful direction from the *In re Martin Grinding* case, this Court does not feel compelled to follow, nor is it persuaded by, the decision in *In re Werth*.

C. *In re Martin Grinding & Machine Works, Inc.*

In *In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592 (7th Cir.1986), the Seventh Circuit addressed, *inter alia*, the issue of what collateral a security interest will attach to and the relationship between the security agreement and the financing statement.

The court begins by noting that "a broader description of collateral in a financing statement is ineffective to extend a security interest beyond that stated in the security agreement." *In re Martin Grinding*, 793 F.2d at 594 *quoting Allis–Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 432, 72 Ill.Dec. 840, 843, 453 N.E.2d 145, 148 (1983). The court also relied on the Illinois Code Comment to Ill.Rev.Stat. ch. 26, ¶ 9–110 which states that "[t]he security agreement and the financing statement are double screens through which the secured party's rights to collateral are viewed, *and his rights are measured by the narrower of the two.*" *Id.* (emphasis added). The Seventh Circuit then concluded that, "under Illinois law, a security interest attaches only to property described in the security agreement." *In re Martin Grinding*, 793 F.2d at 594–95.

The court continued, stating that:

[t]he Code contemplates that a subsequent creditor that is considering extending credit to a debtor will examine any

financing statements filed under the debtor's name to determine whether the debtor's property might be subject to a prior security interest. *See* J. White & R. Summers, *Uniform Commercial Code* § 23–3 (2d ed. 1980). *If a financing statement gives notice of a prior security interest, then the subsequent creditor can examine the security agreement to determine what property secures the debtor's existing obligations. See id.*

*In re Martin Grinding*, 793 F.2d at 596–97 (emphasis added).

■ Applying the different standards enunciated by the Seventh Circuit in *In re Martin Grinding* to the present case, this Court finds the following. First, the plaintiff Fulton State Bank is attempting to enforce a security interest in collateral which goes beyond that which is described in the security agreement. The security agreement dated March 1, 1983 listed the following under the "Description of Collateral" heading: "1980 gleaner N–5 combine serial # 2000–5 [sic], 1975 Int. 8 row corn planter, 1978 AC7080 tractor Serial # 3059 and AC7080 tractor serial # 3059 and AC7000, 1978 serial # 4648." Of the three items at issue in this case, only one—the 1980 gleaner N–5 combine, Serial # 2005—is described. Therefore, it would appear that Fulton State Bank would only have a perfected security interest in the combine, if at all. Second, the security agreement dated March 1, is clearly narrower than the financing statement filed on that same day. Therefore, in accordance with the decision of the Seventh Circuit in *In re Martin Grinding*, this Court must look to the narrower of the two to determine what property is actually covered under the financing statement and security agreement. This Court holds that the security agreement must control—and finds that only the gleaner combine is specified in that document. Finally, the Seventh Circuit has outlined a standard for determining the adequacy of a description in a financing statement. That financing statement need only give notice of the security interest, and the creditor then has the burden of examining the particular security

agreements to determine what property is covered. In the present case, the financing statement successfully accomplished its goal of putting a subsequent creditor on notice that further examination of the security agreement was necessary in order to determine what property is covered. Because examination of the security agreement reveals that only the gleaner combine was covered, Fulton State Bank would not be entitled to more than that one item.

Thus far, we have determined that Fulton State Bank is entitled only to the gleaner combine which was properly described in the security agreement. The final step of an analysis in this case requires this Court to determine who is entitled to the final two pieces of equipment. It has already been determined that Deutz–Allis, successor in interest from Allis–Chalmers and Hatzer & Nordstrom Equipment Company, filed a UCC–1 Financing Statement on April 25, 1983 covering not only the combine, but also the grain platform and corn head. Because the Financing Statement of Fulton State Bank has been found to have properly covered only the combine, the April 25, 1983 Financing Statement of Deutz–Allis is actually the *first* proper perfection of an interest in the corn head and grain platform. Therefore, Deutz–Allis is entitled to those two pieces of farm equipment.

Therefore, in accordance with the reasons set forth above, and consistent with Illinois law and the Seventh Circuit's holding in *In re Martin Grinding*, plaintiff's motion for summary judgment only as to Allis–Chalmers gleaner N–5 combine is granted and plaintiff's motion for summary judgment is denied in all other respects; defendant's cross-motion for summary judgment only as to the 20 foot grain platform and 438 corn head is granted and defendant's cross-motion for summary judgment is denied in all other respects.

## CONCLUSION

For the reasons set forth in the opinion above, plaintiff's motion for summary judgment is granted in part and denied in part and the court orders that plaintiff be

awarded the Allis–Chalmers gleaner N–5 combine, serial number 2005. Further, defendant's cross-motion for summary judgment is granted in part and denied in part and the Court orders that defendant be awarded the Allis–Chalmers 20–foot grain platform, serial number N–F06075N and the Allis–Chalmers 438 corn head, serial number 3040.