**In the Matter of CALIFORNIA PUMP & MANUFACTURING CO., INC., Bankrupt.**

**Jim L. SELBY, 3–74–425, Plaintiff-Appellant,**

v.

**John M. ENGLAND, Trustee, Defendant-Appellee.**

**No. 75–3518.**

United States Court of Appeals, Ninth Circuit.

Nov. 20, 1978.

Rehearing and Rehearing En Banc Denied Dec. 29, 1978.

---

Lawrence Goldberg (argued), of Glicksberg, Kushner & Goldberg, San Francisco, Cal., for plaintiff-appellant.

Robert E. Phelan (argued), San Francisco, Cal., for defendant-appellee.

Before KILKENNY and CHOY, Circuit Judges, and PREGERSON *, District Judge.

CHOY, Circuit Judge:

Jim Selby (the creditor) appeals the district court's affirmance of a judgment of the bankruptcy court which held that an alleged security interest in certain tangible personal property of California Pump and Manufacturing Company (the bankrupt) is

* The Honorable Harry Pregerson, United States District Judge for the Central District of California, sitting by designation.

void as against the trustee in bankruptcy. We affirm.

### Facts and Proceedings Below

The parties have stipulated to the following facts: Prior to bankruptcy, the creditor loaned $50,000 to the bankrupt. To secure repayment, the parties entered into a security agreement and filed a financing statement. The security agreement describes the collateral securing the loan as:

> All of the furniture, fixtures, leasehold improvements, inventory, and accounts receivable . . . located at:
> California Pump & Manufacturing Co., Inc.
> 436 Rozzi Place
> So. San Francisco, CA 94080
> owned by the corporation . . . .

The financing statement contained a similar, though slightly different, description.[1] The operating equipment of the bankrupt, however, was located at the bankrupt's plant in Fresno, California and later in Hayward, California. It was never located at the South San Francisco address given in the security agreement and financing statement.

The property located in Fresno and Hayward is the subject of this appeal. Pursuant to a stipulation between the trustee and the creditor, the bankruptcy estate sold all the property of the bankrupt which had been located in Fresno and Hayward and is holding the net proceeds subject to this litigation.

### Security Agreement and Parol Evidence

██ The creditor contends that parol evidence, had it been admitted by the court below, would have established that the parties intended to give the creditor a security interest in all the bankrupt's property including the Fresno-Hayward property. The trustee argues that parol evidence cannot be used to establish the creditor's claim to the Fresno-Hayward property. Of course,

if it is determined that the creditor does not have a security interest in the disputed property enforceable against the bankrupt, the trustee, who succeeds to the rights and defenses of the bankrupt, would have a superior claim to that property. Bankruptcy Act § 70(c), 11 U.S.C. 110(c); *see* J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 866 (1972).

The California Commercial Code requires that parties take certain steps to create an enforceable security interest. Section 9203 requires that the debtor sign a security agreement "which contains a description of the collateral . . . ." Section 9110 elaborates on what constitutes a sufficient description of the collateral:

> [A]ny description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described. Personal property may be referred to by general kind or class if the property can be reasonably identified as falling within such kind or class or if it can be so identified when it is acquired by the debtor.

██ Tested against the § 9110 standard, a description limited to property situated in South San Francisco does not "reasonably identify" property actually located in Fresno or Hayward. Though § 9110 allows reference to personal property of a "general kind or class," we are unable to convert a clear and unambiguous designation of personal property located in a specific place into a description of all of the debtor's personal property wherever situated. When parties freely sign an agreement covering certain property, this court will not alter the clear language the parties employ.

██ The creditor argues that any defect in the description of the collateral can be cured by the introduction of parol evidence and reformation of the security agreement.

---

1. The financing statement described the collateral as:
   > All furniture, fixtures, equipment, inventory and accounts receivable owned by Debtor and located at 436 Rozzi Place, South San Francisco, California 94080.

These arguments, however, do not find support either in the language of the California Commercial Code or in the cases which interpret it.[2] Comment 3 to § 9203 indicates that one purpose of that section's formal requirements for the creation of a security interest is to minimize "the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured." Comment 5 states in a similar vein that the requirement of a signed writing is in the "nature of a statute of frauds." Clearly, these purposes would be undermined were this court to permit the creditor to adduce parol evidence in an attempt to alter the unambiguous language of the agreement.

In discussing the statute of frauds aspects of § 9203, Professors White and Summers noted:

> [P]resumably the written agreement must contain at least a general description which an objective observer would find to include the collateral in question. If it does not, the court should find that the writing requirement is not met and should not allow parol evidence further to define the type of collateral in fact covered by the security agreement.

White & Summers, *supra* at 788. We approve of this statement. To hold otherwise would be to ignore the evidentiary purposes § 9203 is designed to serve.

The approach urged by the creditor would prove detrimental not only to the goals of § 9203 but also to the fundamental goal that Article IX of the Uniform Commercial Code, adopted by California, is intended to promote. As expressed in the comment to § 9101: "The aim of this Article is to provide a simple and unified structure within which the immense variety of present day financing transactions can go forward with less cost and with greater certainty." We would detract from commercial certainty were we to disregard the parties' written instruments and determine commercial relationships according to parol evidence. We thus hold that parol evidence may not be admitted to reform the instant security agreement.[3]

*In re Amex-Protein Development Corp.*, 504 F.2d 1056 (9th Cir. 1974), is consistent with our present holding. There a promissory note incorporated by reference invoices which described the collateral. Such incorporation being consonant with the liberal reading which § 9203 should be given, we held:

> [T]here is no requirement that the description of the collateral be complete within the four corners of the security agreement or other single document. The description in the security agreement is sufficient, however, if it provides such information as would lead a reasonable inquirer to the identity of the collateral.

*Id.* at 1060. Here, however, the parties do not seek to incorporate documents. Rather, the creditor seeks to offer oral testimony to contradict the clear language of the agreement. Introduction of such parol evidence is impermissible.

We hold that the security agreement did not create a security interest in the Fresno-Hayward property. Therefore, we need not inquire into whether the elements necessary for perfection of that interest are present.

AFFIRMED.

---

2. The creditor argues that (1) reformation of the security agreement is appropriate, (2) parol evidence is admissible in a reformation action, and (3) the financing statement, as written, is sufficient to perfect the security agreement as reformed. His first two arguments, however, rely on common law decisions and general equitable principles rather than the statutes on secured transactions contained in the California Commercial Code. Though his third argument focuses on the relevant statutes, our holding *infra* makes any discussion of its merits unnecessary.

3. Moreover, the drafters of the Code "reduce[d] formal requisites to a minimum" in order to obviate the need for judicial "escape from the elaborate requirements" antedating the UCC. § 9203, comment 5.