In re Johnny Kirtland LEE, Connie Sue Lee, Bankrupts.

PEOPLES BANK OF ELK VALLEY, Plaintiff,

v.

MURFREESBORO PRODUCTION CREDIT ASSOCIATION and First National Bank of Huntland, Defendants.

Bankruptcy Nos. BK–4–79–117, BK–4–79–118.

Adv. No. 1–80–78.

United States Bankruptcy Court, E. D. Tennessee.

Oct. 26, 1981.

Raymond W. Fraley, Jr., Fayetteville, Tenn., for plaintiff.

George C. Eblen, Shelbyville, Tenn., for defendant, Murfreesboro Production Credit Ass'n.

Floyd Don Davis, Winchester, Tenn., for defendant, First Nat. Bank of Huntland.

MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This is a dispute between three creditors, each of which had a perfected security interest in livestock owned by the bankrupt, Johnny Lee. One of the creditors, Murfreesboro Production Credit (MPC), took some cattle and pigs and sold them. The other creditors, two banks, contend they are entitled to all or part of the proceeds from MPC's sale.

MPC perfected its security interest by filing a financing statement in June, 1978. That was after Peoples Bank of Elk Valley had filed and before First National Bank of

Huntland filed. When all the security interests in question have been perfected by filing, priority in the same collateral depends on the time of filing. Tenn.Code Ann. § 47–9–312(5)(a).

Priority according to the time of filing is clear if each creditor had a security interest in the livestock sold by MPC. The questions are (1) whether MPC had a security interest in the livestock it took and sold and (2) whether some of the livestock sold by MPC was subject to the Elk Valley Bank's prior security interest.

(1)

The Huntland Bank cannot recover if MPC had a security interest in the livestock it took. MPC's security interest would have priority over the bank's, and the proceeds were not enough to pay MPC's secured debt.

The Huntland Bank had a security interest in "100 pigs". MPC took eight sows and ninety-eight pigs.

■ MPC's security agreement and financing statement covered all of the bankrupt's cattle and pigs, including offspring and after-acquired cattle and pigs. Both banks argue that MPC nevertheless didn't have a security interest in any of the livestock it took.

MPC picked up the livestock from the bankrupt's farm in Vanzant Bend. The argument is that MPC did not have a security interest in any livestock kept on that farm. The argument is based on the following provision in MPC's security agreement:

> All of the above described crops and fixtures are or will be located on the farm land owned ... by Johnny K. Lee located on the Huntland Road ... 16 miles W. from Winchester, Tn.

The land described is not the farm in Vanzant Bend.

The court believes that MPC nevertheless had a security in the livestock it took. The quoted provision does not apply to livestock, but only to crops and fixtures. Under Article 9 of the Uniform Commercial Code (UCC), crops and livestock are separate

kinds of "farm products". Livestock is not a crop. Tenn.Code Ann. §§ 47–9–105(f) & 47–9–109.

It can be argued that the provision must apply to the livestock since MPC did not take a security interest in crops or fixtures. The argument is not convincing.

MPC has a tightly drawn combination security agreement and financing statement. It says only what it must say. To create and perfect a security interest in crops, the security agreement and financing statement must describe the land. To perfect a security interest in fixtures, the financing statement must describe the real estate. Tenn.Code Ann. §§ 47–9–203(1)(b) & 47–9–402(1).

Therefore, MPC's form provides for stating a location when the security interest is in crops or fixtures. The provision cannot be made to apply to livestock by the mistake of some over-zealous or over-cautious loan officer who filled in the blanks.

■ By design or otherwise, a security agreement may limit the security interest to moveable collateral only so long as it is kept at one location. Compare *In re California Pump & Manufacturing Co., Inc.*, 588 F.2d 717, 25 U.C.C.Rep.Serv. 576 (9th Cir. 1978) and *In re Nickerson & Nickerson, Inc.*, 452 F.2d 56, 9 UCC Rep.Serv. 1266 (8th Cir. 1971). However, in most cases involving farmers with several tracts of land, it is unlikely that a secured creditor would make its security interest depend on the location of the livestock. The debtor could end the security interest simply by moving the livestock.

Consider, for example, the Elk Valley Bank's security agreement. It provides:

> All of the above described goods and crops will be located, kept, or grown on the land owned by Johnny K. Lee and described as follows:
>
> Located in Vanzant Bend on the old Jim Gray Farm in _____ civil district of Franklin County, Tenn.

Rather than using "fixtures", this provision applies to "goods", which includes livestock. Tenn.Code Ann. §§ 47–9–105(f) & 47–9–109.

The security agreement thus gives a location for the livestock in which the Elk Valley Bank took a security interest.

■ The provision did not mean the security interest would have ended if the livestock had been moved from the farm at Vanzant Bend. The location did help describe the livestock. The provision was also a promise by the debtor to keep the livestock on the farm at Vanzant Bend. Unlike crops or fixtures, however, livestock doesn't have a fixed location that is a necessary part of its description. A location may be part of the description without making the security interest depend on the livestock's remaining at that location.

■ The court concludes that MPC's security interest was not limited to the livestock, if any, located at the place described in its security agreement and financing statement. MPC had a security interest in the bankrupt's cattle and pigs, wherever located in the county. It therefore had a security interest in the pigs and sows it took. The Huntland Bank cannot recover any of the proceeds of MPC's sale.

(2)

■ The Elk Valley Bank entered into several security agreements with the bankrupt. Each of the security agreements involving livestock gives specific descriptions of the cattle or pigs. For instance, the dispute in this proceeding involves "Four black white face cows recently purchased of Edde Glaus (with 1st calf); Three red white face cows (raised and bearing tag numbers ranging from numbers 19 to 26, one Guernsey Milch Cow, together with all future increase from said cows." MPC took and sold seven cows. The Elk Valley Bank contends that those seven were among the cows described in the above quotation.

The question is one of identification. The Elk Valley Bank had the prior security interest in the eight cows described above. If MPC took and sold any of them, the Elk Valley Bank is entitled to the proceeds.

The evidence as to what cattle were taken is primarily the bankrupt's testimony.

The reports of the auctioneer and MPC's representative did not describe the seven cows that MPC took. The bankrupt's testimony was as follows.

The bankrupt had about twenty cattle at his farm in Vanzant Bend. Among them were the white-faced cattle and the Guernsey in which the Elk Valley Bank had a security interest. The bankrupt did not say whether there were any white-faced cattle there which were not subject to the Elk Valley Bank's security interest. Also on the farm were some solid black cattle and some mixed breed cattle that the bankrupt called brindle colored.

On the morning of MPC's repossession, the bankrupt left before daybreak. He could see some cattle in front of the barn, but only the Guernsey stood out in the dim light. He could see that some black white-faced cattle were there, but couldn't tell how many. He wasn't sure whether there were any red white-faced cattle or brindle cattle there. He could see that some of the solid black cattle were there.

The bankrupt had last checked the herd three or four days before, when he found out that his bull and a neighbor's bull had torn down a fence and let his cows onto the neighbor's farm. At the time of the trial, the bankrupt hadn't seen the bull since it escaped onto the neighbor's farm. He had seen one of the cows, a black one, still on his neighbor's farm. He didn't try to catch her. The bankrupt also didn't say whether he fixed the fence before MPC took the cows.

There is the danger that, by conveniently not identifying the livestock it takes, a later secured creditor can take collateral in which there is a prior perfected security interest. The prior secured party should not be penalized because it used a specific rather than a broad description of the livestock. Nevertheless, the evidence must show it is more likely than not that the collateral taken was subject to the prior security interest.

The evidence in this case is not sufficient. The court does not know whether MPC took all the cattle it could find or catch on the farm, whether it was still possible for cattle

to escape to the neighbor's farm, or about how many cattle the bankrupt saw that morning. The evidence shows only that on the morning of MPC's round-up there were, among other cattle at the bankrupt's farm, some black white-faced cattle and the Guernsey cow in which the bank had a security interest. The question is how likely it was they were the cows caught by MPC. The evidence does not prove it was more likely than not. Accordingly, the Elk Valley Bank cannot recover.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.