ESCHBACH, Senior Circuit Judge.
The primary issue presented by this appeal is whether, under the Illinois Uniform Commercial Code, loan documents can supplement a security agreement to create a security interest in property inadvertently omitted from the security agreement’s enumeration of secured collateral. The bankruptcy court dismissed a secured party’s claim of a security interest in property not described in the security agreement. The district court affirmed the dismissal. For the reasons stated below, we hold that the loan documents cannot expand the scope of the security agreement and will affirm the district court’s judgment.
I
In 1977 Martin Grinding & Machine Works, Inc. (“debtor”) received a Small Business Administration (“SBA”) guaranteed loan in the amount of $350,000 from Forest Park National Bank (“Bank”). In return, the debtor executed a security agreement dated October 7, 1977, granting the Bank a security interest in the debtor’s machinery, equipment, furniture, and fixtures. The security agreement, however, inadvertently omitted inventory and accounts receivable from its description of the secured collateral. In addition to the security agreement, the debtor executed other loan documents (collectively referred to as “loan documents”),[1] each of which *594 included inventory and accounts receivable as secured property.
In 1981 the debtor obtained a second SBA guaranteed loan from the Bank. This loan, in the amount of $233,000, also was secured by the October 7, 1977, security agreement.
In 1983 the debtor petitioned for voluntary reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101-74. The debtor denied that the Bank held a security interest in its inventory and accounts receivable. The Bank filed a complaint in bankruptcy court to determine the extent of the security interest. The bankruptcy court granted the debtor’s motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Forest Park National Bank v. Martin Grinding & Machine Works, Inc. (In re Martin Grinding & Machine Works, Inc.), 42 B.R. 888, 892 (Bankr.N.D.Ill.1984). The district court affirmed in an unpublished opinion. The Bank now appeals.
II
The precise issue to be decided is whether the Bank holds a security interest in the debtor’s inventory and accounts receivable. The Bankruptcy Code defines a “security interest” as a “lien created by agreement.” 11 U.S.C. § 101(43). Whether an agreement creates a lien depends upon state law. See Butner v. United States, 440 U.S. 48, 54-57, 99 S.Ct. 914, 917-19, 59 L.Ed.2d 136 (1979). In this case, Illinois law determines the scope of the Bank’s security interest.
The Illinois Uniform Commercial Code provides that a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless
(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and
(b) value has been given; and
(c) the debtor has rights in the collateral.
Ill.Rev.Stat. ch. 26, If 9-203(1). The parties agree that the debtor has signed a security agreement, that value has been given, and that the debtor has rights in its inventory and accounts receivable. Moreover, they agree that the loan documents provided for a security interest in the debtor’s inventory and accounts receivable, and that the security agreement did not describe inventory and accounts receivable as secured collateral. They, however, differ as to whether the Bank’s security interest extends to collateral beyond that described in the security agreement to include inventory and accounts receivable. The Bank argues that the loan documents must be considered in determining the scope of its security interest. We disagree.
Allis-Chalmers Corp. v. Staggs, 117 Ill.App.3d 428, 432, 453 N.E.2d 145,148 (1983), holds “that a broader description of collateral in a financing statement is ineffective to extend a security interest beyond that stated in the security agreement.” In reaching this result, the court relied upon Ill.Rev.Stat. ch. 26, 119-201, which provides that a security agreement is effective according to its terms, and upon H 9-203(l)(a), which states that a security interest is not effective against the debtor or third parties unless the debtor has signed a security agreement that contains a description of the collateral. 117 Ill.App.3d at 432, 453 N.E.2d at 148. The court reasoned that “a security interest cannot exist in the absence of a security agreement ..., and it follows that a security interest is limited to property described in the security agreement.” It also relied upon the Illinois Code Comment to Ill.Rev.Stat. ch. 26, 119-110, which states that “ [t]he security agreement and the financing statement are double screens through which the secured party’s rights to collateral are viewed, and his rights are measured by the narrower of the two.” We, therefore, conclude that, under *595 Illinois law, a security interest attaches only to property described in the security agreement. Because the October 7, 1977, security agreement did not include inventory and accounts receivable, the Bank does not hold a security interest in this property.
The Bank, however, seeks to distinguish Allis-Chalmers. First, it asserts that Al-lis-Chalmers involved a dispute between creditors, rather than between a creditor and the debtor’s trustee in bankruptcy. While true, this is a distinction without a difference. The court in Allis-Chalmers decided that a security interest attaches only to collateral described in the security agreement. The Bank’s security agreement did not include inventory and accounts receivable. Therefore, a security interest never attached to the debtor’s inventory and accounts receivable. Because a security interest did not attach to this property under If 9-203(1), the Bank cannot enforce a security interest in inventory and accounts receivable against either a third-party creditor or the debtor.
Second, the Bank argues that, although the plaintiff in Allis-Chalmers relied upon only the financing statement to expand the scope of the security interest, the Bank relies not only upon the financing statement, but also upon the other loan documents. Nevertheless, Allis-Chalmers’s holding that a financing statement cannot extend a security interest beyond that stated in the security agreement is only an application of the general rule that parol evidence [2] cannot enlarge an unambiguous security agreement. See, e.g., Shelby v. England (In re California Pump & Manufacturing Co.), 588 F.2d 717, 720 (9th Cir.1978); H & I Pipe & Supply Co. v. First National Bank of Crossville (In re H & I Pipe & Supply Co.), 44 B.R. 949, 950 (Bankr.M.D.Tenn.1984); American State Bank v. Swearingen (In re Swearingen), 27 B.R. 379, 382-83 (Bankr.D.Kan.1983).
The October 7, 1977, security agreement is unambiguous on its face: it grants the Bank “a security interest in all machinery, equipment, furniture and fixtures ... now owned and hereafter acquired by Debtor for use in Debtor’s business, including without limitation the items described on Schedule ‘A’ attached hereto, together with all replacements thereof and all attachments, accessories and equipment now or hereafter installed therein or attached thereto.” That the security agreement omits any mention of inventory and accounts receivable as secured collateral is unfortunate for the Bank, but does not make the agreement ambiguous. Since the security agreement is unambiguous on its face, neither the financing statement, nor the other loan documents can expand the Bank’s security interest beyond that stated in the security agreement.
Furthermore, Palatine National Bank v. Randall (In re Wambach), 484 F.2d 572 (7th Cir.1973), on which the Bank relies, is inapposite. We held in Wambach, 484 F.2d at 575, that parol evidence may show that a transfer purporting to be absolute was in fact for security, and that an assignment of a beneficial interest, absolute on its face, together with other documents relating to the transaction, may constitute a security agreement. Our holding in Wambach that an assignment absolute on its face, other loan documents, and a financing statement may serve as a security agreement in the absence of a document entitled “Security Agreement” in no way suggests that a financing statement and other loan documents might modify an unambiguous security agreement. Indeed, the Ninth Circuit reached the same conclusion when faced with the same issue and analogous precedent. See California Pump & Manufacturing Co., 588 F.2d at 720 (holding that parol evidence cannot reform a security agreement and distinguishing In re Amex-Protein Development Corp., 504 F.2d 1056, 1060 (9th Cir.1974)).
*596 The Bank also cites Walter E. Heller & Co. v. Salerno, 168 Conn. 152, 362 A.2d 904 (1975). In Heller the Connecticut Supreme Court examined the documents consummating a merger between the debtor and two other companies, and concluded that a security agreement between Heller (the secured party) and the debtor that antedated the merger remained in force as to the debtor’s successors following the merger. The Heller court did not, however, use the merger documents to modify the scope of the security agreement. In our case, the debtor has not merged into another corporation. Hence, Heller is inapplicable.
Thus, Illinois law provides that a security interest attaches to, and is enforceable against the debtor or a third party with respect to, only property identified by the security agreement as secured collateral. This rule, however, works a result that is contrary to the parties’ intentions when the parties agree that certain property would secure a loan, but the creditor inadvertently omits the property from the security agreement’s enumeration of secured collateral.[3] We, therefore, might inquire what is the rule’s rationale.
One answer, which was adopted by Allis-Chalmers, 117 Ill.App.3d at 432, 453 N.E.2d at 843-44, and the district court, is based upon the statutory definition of and requirements for a security agreement. A security agreement is “an agreement which creates or provides for a security interest.” Ill.Rev.Stat. ch. 26, 119-105(1). The agreement must be reduced to writing and must describe the secured collateral. H 9-203(l)(a). Therefore, if the written security agreement does not provide for a security interest in inventory and accounts receivable, then a security interest in inventory and accounts receivable does not exist. Although dictated by the statutory language, this answer does not consider the rule’s effect upon commercial transactions.
Another answer, which was given by the bankruptcy court, see Martin Grinding & Machine Works, Inc., 42 B.R. at 891-92, is that the rule promotes economy and certainty in secured transactions. The aim of Article 9 is to enable “the immense variety of present-day secured financing transactions ... [to] go forward with less cost and with greater certainty.” Ill.Rev.Stat. ch. 26,119-101 Uniform Commercial Code Comment. Accordingly, a purpose of the requisites for a security interest stated in 119-203 is “evidentiary.” H 9-203 Uniform Commercial Code Comment 3. “The requirement of [a] written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured.” Id.
The Code contemplates that a subsequent creditor that is considering extending credit to a debtor will examine any financing statements filed under the debt- or’s name to determine whether the debt- or’s property might be subject to a prior security interest. See J. White & R. Summers, Uniform Commercial Code § 23-3 (2d ed. 1980). If a financing statement gives notice of a prior security interest, then the subsequent creditor can examine the security agreement to determine what property secures the debtor’s existing obli *597 gations. See id. The description of the secured collateral contained in the security agreement might be narrower than that in the financing statement.[4] Since parol evidence cannot enlarge a security interest beyond that stated by an unambiguous security agreement, then the subsequent creditor can rely upon the face of the security agreement to determine what property is subject to a prior security agreement.[5]
However, if parol evidence could enlarge an unambiguous security agreement, then a subsequent creditor could not rely upon the face of an unambiguous security agreement to determine whether the property described in the financing statement, but not the security agreement, is subject to a prior security interest. Instead, it would have to consult the underlying loan documents to attempt to ascertain the property in which the prior secured party had taken a security interest. The examination of additional documents, which the admission of parol evidence would require, would increase the cost of, and inject uncertainty as to the scope of prior security interests, into secured transactions. See California Pump & Manufacturing Co., 588 F.2d at 720; H & I Pipe & Supply Co., 44 B.R. at 951. Therefore, although the rule excluding parol evidence works results contrary to the parties’ intentions in particular cases, it reduces the cost and uncertainty of secured transactions generally.[6]
*598 We, therefore, conclude that the Bank does not hold a security interest in the debtor’s inventory and accounts receivable. The district court thus correctly affirmed the bankruptcy court’s dismissal of the Bank’s claim.
Ill
For the above reasons, the district court’s judgment is
Affirmed.

. The additional loan documents that described the debtor’s inventory and accounts receivable as secured collateral were: (1) a SBA Authorization and Loan Agreement, dated October 7, 1977; (2) the debtor’s Corporate Resolution, dated October 7, 1977; (3) a Note in the Principal Sum of $350,000, dated October 7, 1977; (4) an Authorization and Loan Agreement, dated February 24, 1981; (5) the debtor’s Corporate Resolution, dated March 10, 1981; and (6) a Note in the Principal Sum of $233,000, dated March 20, 1981.

. We use parol evidence to mean extrinsic evidence, whether oral or written. See 9 J. Wig-more, Evidence § 2400(2) (Chadbourn rev. 1981).

. Indeed, the effect of excluding property from the security agreement’s description of secured collateral is harsher than that of omitting such property from the financing statement’s description of secured collateral. If the description of collateral contained in the security agreement is narrower than that in the financing statement, a security interest does not attach to the omitted property. Thus, a security interest would not be enforceable against either the debtor or a third party. However, if the description of collateral contained in the security agreement is broader than that in the financing statement, then a security interest would seem to attach to the omitted property, but would be unperfected. See B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 2.2[3], at S2-15 (1985 cumulative supp. no. 2). In this event, a security interest in the omitted property would be enforceable against the debtor, but would be subordinate to a third party’s subsequently perfected security interest.

. The discrepency between the financing statement’s and security agreement’s descriptions of secured collateral might be inadvertent. Either the financing statement might have inadvertently included property that the parties did not intend would serve as secured collateral, or, as happened here, the security agreement might have accidentally omitted property that the parties intended would secure the obligation. The difference might also be intentional. The prior secured party might have filed a broad financing statement before it and the debtor agreed what property would secure the obligation in order to protect the priority of its security interest. See J. White & R. Summers, Uniform Commercial Code § 25-4 (2d ed. 1980). The prior secured party and the debtor might then agree that the obligation would be secured by only some of the property described in the financing statement. Therefore, that the description of secured collateral contained in the security agreement is narrower than that in the financing statement does not necessarily mean that the security agreement inadvertently omitted property that the parties had agreed would secure an obligation.

. Even when it can determine from the face of an unambiguous security agreement what property is subject to a prior security interest, a cautious subsequent creditor should not simply adopt as secured collateral property that was described in a prior financing statement, but omitted from the prior security agreements. The prior secured party was the first to file a financing statement. Therefore, under Ill.Rev. Stat. ch. 26, 1f 9-312(5)(a), the priority of any security interest taken by the prior secured party in property described in the financing statement relates back to the date of filing of the financing statement. See J. White & R. Summers, Uniform Commercial Code § 25-4 (2d ed. 1980). Assuming that the subsequent creditor took a security interest in the property that was omitted from the security agreement, the prior secured party could subordinate the subsequent creditor’s security interest by obtaining another security agreement that includes the previously omitted property as secured collateral. See id.; see also 1 G. Gilmore, Security Interests in Personal Property § 15.3 n. 10 (1965). Thus, a careful subsequent creditor would not make a loan that used as security property that was included in a prior financing statement but omitted from the prior security agreement, unless the prior secured party had executed a subordination agreement in favor of the subsequent creditor. See 1 G. Gilmore, supra, § 15.3 n. 10.
Since the subsequent creditor, by obtaining a subordination agreement, can guard itself against the risk that its security interest will be subordinated, it should bear the risk of subordination. Unless it undertakes an examination of the underlying loan documents, it, however, cannot protect itself against the risk of a mistake in the construction of an unambiguous prior security agreement. Yet, the prior secured party can easily protect itself against the risk of a mistake in the interpretation of its security agreement simply by comparing the security agreement with the underlying loan documents. Thus, the prior secured party, not the subsequent creditor, should bear the risk of mistakes in the construction of unambiguous security agreements.

. It, however, might be argued that considerations of cost and certainty justify a rule barring parol evidence whenever there is a priority dis *598 pute among secured parties, but not when there is a non-priority dispute between a secured party and the debtor. A rule allowing parol evidence to supplement a security agreement with consistent additional terms in only non-priority disputes arguably would permit a subsequent creditor to rely upon an unambiguous security agreement, and also would enable a prior secured party to enlarge the security agreement to include property that the parties had agreed would secure the obligation, but which the written document had inadvertently omitted.
Nevertheless, we decline to adopt a rule permitting parol evidence to enlarge an unambiguous security agreement. First, we are aware of no authority that supports such a proposition. Indeed, the holding in Allis-Chalmers, 117 Ill. App.3d at 432, 453 N.E.2d at 843, that "a security interest is limited to property described in the security agreement” would seem to preclude such a rule. Federal courts will not adopt innovative rules of state law without clearer guidance from the state courts. See Prudential Insurance Co. v. Sipula, 776 F.2d 157, 162 (7th Cir.1985); Twin Disc, Inc. v. Big Bud Tractor, 772 F.2d 1329, 1333 (7th Cir.1985). Second, the dispute in this case is not simply between the Bank and the debtor. The debtor has entered bankruptcy and other creditors have submitted claims. To hold that the Bank has a perfected security interest in the debtor’s inventory and accounts receivable might reduce the amount available to satisfy the other creditors’ claims.