In re INVENUX, INC., Debtor.

Medallion Biomedical, LLC, Plaintiff,

v.

Joseph Rosania, Defendant.

Bankruptcy No. 03–11694 EEB.
Adversary No. 03–1306 HRT.

United States Bankruptcy Court,
D. Colorado.

Aug. 21, 2003.

Brent R. Cohen, Denver, CO, for Debtor.

Bart B. Burnett, Chad S. Caby, Pearson, Horowitz & Poskus, Denver, CO, for Trustee/Defendant.

Richard O. Campbell, Denver, CO, for Plaintiff.

### ORDER RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on Defendant/Trustee's Motion to Dismiss Adversary Complaint for Failure to State a Claim Upon Which Relief can be Granted [the "Motion to Dismiss"] and Plaintiff's Cross Motion for Summary Judgment [the "Motion for Summary Judgment"]. The Court, having reviewed the Motions and responses thereto and having reviewed the file in this matter will deny both motions.

 Dismissal of a case prior to allowing the parties an opportunity to engage in discovery and develop a more complete understanding of the facts and circumstances surrounding the issues raised in an action is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice" *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). In the Court's review of a motion to dismiss under Fed. R. Bankr.P. 7012, it must "accept as true 'all well-pleaded factual allegations in the amended complaint,' and those allegations are 'viewed in the light most favorable to the nonmoving party.'" *County of Santa Fe, N.M. v. Public Service Co. of New Mexico,* 311 F.3d 1031, 1034 (10th Cir.2002) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999)). This Court is bound to apply "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, (1957). The Tenth Circuit Court of Appeals has observed that "the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Maez v. Mountain States Telephone and Telegraph, Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 386 (5th Cir.1985)).

Plaintiff in this action seeks to reform its security agreement on the basis of mutual mistake. According to the Plaintiff's Complaint, it was the intention of the parties to the agreement that Plaintiff was to receive a security interest in certain shares of stock in Cropsolutions, Inc. [the "Stock"] which were owned by the Debtor and in which the Chapter 7 Trustee now claims an interest. Although the UCC–1 financing statement which Plaintiff filed to

perfect its security interest is worded broadly enough to embrace an interest in the Stock, it does not appear as part of the collateral in the security agreement. Plaintiff claims that a "scrivener's error" resulted in a written security agreement which did not reflect the agreement and intent of the parties.

Under the law of the state of Colorado, an instrument may be reformed when, due to a mutual mistake, the written document fails to reflect the agreement and intent of the parties. *See, e.g., Maryland Casualty Co. v. Buckeye Gas Products Co. Inc.*, 797 P.2d 11, 13 (Colo.1990) (en banc); *Woodruff v. O'Dell*, 701 P.2d 112, 114 (Colo.Ct.App.1985).

Trustee maintains that such right of reformation is not available where the agreement at issue is a security agreement under the Colorado version of the Uniform Commercial Code. Colo.Rev.Stat. § 4–9–203 sets out the minimum requirements for a security agreement to be valid under the U.C.C. At minimum, the debtor must authenticate "a security agreement that provides a description of the collateral." Colo.Rev.Stat. § 4–9–203(b)(3)(A). There is no disagreement between the parties that the collateral that Plaintiff alleges it intended to take a security interest in is not described in the security agreement. Thus, according to the Trustee's argument, Colo.Rev.Stat. § 4–9–203 is not complied with.

The issue for this Court is whether Colo.Rev.Stat. § 4–9–203 displaces Colorado's common law such that the right of reformation due to mutual mistake—a common law right available to contracting parties generally—is not available to parties intending to create a security agreement under Article 9 of the U.C.C. If that is the case, then Trustee's Motion to Dismiss must be granted because Plaintiff has not pleaded facts that would allow it to recover the relief it seeks.

Plaintiff's belief is that Colo.Rev.Stat. § 4–1–103 addresses that issue in its favor. That section provides that "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Colo.Rev.Stat. § 4–1–103. Consequently, the common law relating to fraud, mistake, duress, coercion, etc. still applies to agreements under the U.C.C., and that body of law applies to the instant agreement, unless it is apparent that § 4–9–203 has displaced those common law principles with respect to security agreements.

This Court believes that the requirements of Colo.Rev.Stat. § 4–9–203 do not displace state law with respect to mutual mistake. The bedrock upon which contract law is built is the determination and enforcement of the intent of the parties. *George v. Tate*, 102 U.S. 564, 570, 26 L.Ed. 232 (1880) ("The intent of the parties is the contract, and whenever that is ascertained, however inartificially [sic] expressed, it is the duty of courts to give it effect."); *Chesapeake & Ohio Canal Co. v. Hill*, 15 Wall. 94, 82 U.S. 94, 100, 21 L.Ed. 64 (1872) (To "ascertain the substantial intent of the parties" is the "fundamental rule in the construction of all agreements."); *Echo Acceptance Corp. v. Household Retail Services, Inc.*, 267 F.3d 1068, 1080 (10th Cir.2001) ("A fundamental rule of contract law is that the court should strive to ascertain and give effect to the mutual intent of the parties.") (quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo.1984)). Mutual mistake, like fraud, duress, coercion, capacity to

contract, etc. goes to that question of intent which is the very heart of contract formation.

There is no question that § 4–9–203 is in the nature of a statute of frauds because it requires a security agreement to be in writing. Colo.Rev.Stat. § 4–9–203 comment 3. But the fact that an agreement must be in writing to satisfy a statute of frauds is not inconsistent with reformation of that written agreement if, by reason of mutual mistake, the true agreement of the parties is not expressed in the writing. *See, e.g.,* 4 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 32–2 (4th ed.) (Even though security is enforceable as against the debtor under Article 9, it still may be unenforceable even against the debtor under other state law. Thus it is elementary that one party to a consensual transaction may rescind for fraud, for mutual mistake, for duress or for undue influence); *Moon v. Bank of America (In re Schutz),* 241 B.R. 646 (Bankr.W.D.Mo.1999) (The court reformed a security agreement that contained incorrect collateral description on basis of mutual mistake.).

There is no allegation that the agreement currently before the Court is anything but crystal clear in its terms and that it simply does not grant a security interest in the Stock. Trustee argues that, when a written agreement is clear and unambiguous on its face, the parol evidence rule operates such that evidence extrinsic to the document itself is not admissible to vary the terms of the agreement.

■ In the case of *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700 (10th Cir. 1972), the Tenth Circuit properly held that parol evidence was not admissible to vary the terms of an unambiguous security agreement. The section of the SBA's uniform security agreement which calls for a description of collateral did not include

inventory, accounts receivable or contract rights. In a separate section of the security agreement that called for classification of the collateral, boxes were checked indicating that the collateral did include inventory, accounts receivable and contract rights. In addition, a UCC–1 financing statement was properly filed which listed inventory, accounts receivable and contract rights among the collateral. The bankruptcy referee held that the security agreement was ambiguous and admitted testimony from a bank vice president that participated in the loan transaction. He testified that it was the bank's intention to take a security interest in the items missing from the collateral list. On, appeal the district court reversed the referee's determination and the Tenth Circuit affirmed. The court held "that parol evidence as to the parties' intentions was inadmissible." *Id.* at 704. "It is a familiar rule that extrinsic evidence is not admissible, either to contradict, add to, subtract from, or vary the terms of a written instrument." *Randolph v. Helps,* 9 Colo. 29, 10 P. 245, 247 (1886); *see also Magnetic Copy Services, Inc. v. Seismic Specialists, Inc.* 805 P.2d 1161, 1164 (Colo.Ct.App.1990) ("Although parol evidence may be considered by the trial court to determine if a contract is ambiguous, if, as here, after hearing the evidence the contract remains unambiguous the parol evidence should be stricken."); *D.C. Concrete Management, Inc. v. Mid–Century Ins. Co.,* 39 P.3d 1205, 1207 (Colo.Ct.App.2001) ("If a document is unambiguous, it cannot be varied by extrinsic evidence. However, a written document containing ambiguities or unclear language must be construed in accordance with the intent of the parties.").

■ But where the evidence shows that the contract in question, even if it is unambiguous and clear on its face, does not represent a meeting of the minds of

the parties because of a *mutual mistake,* Colorado courts routinely reform the contract to express the shared intent of the parties to the agreement. *Maryland Casualty Co. v. Buckeye Gas Products Co. Inc.,* 797 P.2d 11, 13 (Colo.1990) ("Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties and the purpose of reformation is to give effect to the parties' actual intentions.... A mistake caused by a scrivener's error so that a written agreement does not correctly state the parties' actual intentions and expectations may be remedied by reformation.") (internal citations omitted); *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13, 17 (1977) ("Reformation is generally permitted where, as here, the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. Reformation is also appropriate where the variance between the instrument and the true agreement of the parties, hence the mutual mistake of fact, is caused by the draftsman.") (internal citations omitted).

 There is a critical difference between application of the parol evidence rule to exclude extrinsic evidence to vary the terms of an unambiguous written agreement and a case, such as this, where there is a claim of mutual mistake. Where there is a claim of mutual mistake, the parol evidence rule simply has no application and a court may consider extrinsic evidence which goes to the question of exactly what the agreement of the parties was and whether that agreement was expressed in the written document. *See C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 817 P.2d 238, 241–45 (1991) (The New Mexico Supreme Court provides a lengthy explanation of the distinction between application of the parol evidence rule to a contract interpretation issue and the admission of all relevant evidence bearing on the issue of mutual mistake, even when the writing is clear on its face); *Edmiston v. Wilson,* 146 W.Va. 511, 120 S.E.2d 491, 499–500 (1961) ("Parol evidence to establish and correct a mutual mistake of fact in an unambiguous written instrument is admissible not because of an exception to the parol evidence rule, but because that rule does not apply to or preclude the admission of such evidence for that purpose"); *Beynon Bldg. Corp. v. National Guardian Life Ins. Co.,* 118 Ill. App.3d 754, 74 Ill.Dec. 216, 455 N.E.2d 246, 250 (1983) ("It is well settled that the parol evidence rule is no bar to the admission of evidence on the question of mutual mistake, and this is so even when the instrument to be reformed is clear and unambiguous on its face."). Thus, while a court with a clear and unambiguous instrument in front of it may not consider evidence extrinsic to the document to aid interpretation of the writing, where the issue is one of mutual mistake rather than construction of the contract, the court must consider such evidence when it is relevant to the actual intentions of the parties.

The Trustee also relies, in part, on the case of *Shelton v. Erwin,* 472 F.2d 1118 (8th Cir.1973). In that case, the Eighth Circuit agreed with the district court that it had been the clear intent of the parties to create a security interest in favor of the party who sold an automobile to the debtor and financed the purchase. Nonetheless, it found that no such security interest had ever been created. The issue in that case was whether the court could construe a bill of sale and a title application together as constituting a security agreement. It could not. This was not a case of an incomplete or otherwise defective collateral description. This was a case where no security agreement existed and the court

refused to create one out of whole cloth, even where it recognized that the parties intended to do so. This is a fundamentally different issue than is presented in this case. In *Shelton,* the creditor simply had no written security instrument. Without a signed security agreement, the requirements of UCC § 9–203 were not complied with. Consequently, there was no agreement for the court to construe in the first instance.

The Trustee cites the Court to the case of *Straight v. First Interstate Bank of Commerce (In re Straight),* 207 B.R. 217 (10th Cir. BAP 1997). There, the appellate panel upheld the bankruptcy court's refusal to consider parol evidence to determine the intent of the parties to a security agreement where the court found the security agreement to be clear and unambiguous on its face. The court's discussion in *Straight* is devoid of any discussion of a claim of mutual mistake.

 The Trustee argues that the complaint should be dismissed because reformation is not available to Plaintiff in this matter due to the Trustee's reliance on the written security agreement. But, the Court thinks that argument misses the distinction between the security agreement and a financing statement. A security agreement is an agreement between the owner of property and a secured party. The financing statement, on the other hand, is the document which is filed to give notice. The financing statement in this case does put third party creditors on notice that the secured party is taking a security interest in all assets of the Debtor. If a third-party creditor places reliance on any document, it would have to be the financing statement. Where the financing statement properly identifies the collateral, but the security agreement fails to do so, the Court does not find any reliance interest which would act as a bar to reformation of the agreement.

In *Selby v. England (In re California Pump and Mfg. Co., Inc.),* 588 F.2d 717 (9th Cir.1978), the Ninth Circuit refused to allow the introduction of extrinsic evidence in order to reform *both* a security agreement and the financing statement. Both documents indicated that the creditor was taking a security interest in all of the debtor's property located at its San Francisco location. The bankruptcy trustee claimed the property located at debtor's Hayward and Fresno locations and the creditor sought reformation of the security agreement and financing statement to reflect that it had a security interest in all of the debtor's property, wherever located. The court found that it was "unable to convert a clear and unambiguous designation of personal property located in a specific place into a description of all of the debtor's personal property wherever situated." *Id.* at 719. While the court did not discuss whether or not it had considered the doctrine of mutual mistake, it would have made no difference in the result. Even if the security agreement had reflected the other locations, the fact that the creditor filed a financing statement that failed to describe the property located in Fresno and Hayward, in and of itself, was fatal to the creditor's position against a bankruptcy trustee. In that case, the Trustee could assert the reliance of a hypothetical lien creditor in the financing statement. *See, e.g., Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1297–98 (10th Cir.1986); *Schneider v. Caprock Indus., Inc. (In re Lions Farms, Inc.),* 54 B.R. 241, 243 (Bankr.D.Kan.1985). But, that is a situation which is at variance from the facts in this case.

 It is not at all clear to the Court that the fact that the Trustee may exercise his strongarm powers under

§ 544 should change the equation. The Trustee's avoidance powers, under § 544's strongarm provisions, give the Trustee the status of either: a judicial lien creditor (§ 544(a)(1)); a creditor entitled to an execution on the debtor's property (§ 544(a)(2)); or a bona-fide purchaser of real estate (§ 544(a)(3)), and gives him all of the rights and powers possessed by those categories of creditors to avoid transfers by or obligations of the debtor. But § 544 specifically incorporates the substantive state law under which those classes of creditors may exercise their rights. *Midlantic National Bank v. Bridge (In re Bridge)* 18 F.3d 195, 200 (3rd Cir.1994) ("The trustee's avoidance powers do not supplant state law; rather the trustee's powers under § 544(a) are subject to the law of the locus of the property. The incorporation of state law in this regard establishes that '[w]herever under the applicable law such a creditor or bona fide purchaser might prevail over prior transfers, liens, encumbrances or the like, the trustee will also prevail.' ") (quoting 4 Collier at ¶ 544.01, 544–3); *Hendon v. G.E. Capital Mortgage Services, Inc. (In re Carpenter)*, 266 B.R. 671, 673 (Bankr. E.D.Tenn.2001) ("While federal law grants to the Trustee the status of a judicial lien creditor or bona fide purchaser, the court must look to state law to determine the extent of those powers.") Thus, where a bankruptcy trustee relies upon an instrument which is subject to reformation under state law, and where such reformation would defeat the rights and powers of a hypothetical lien creditor or bona fide purchaser, the trustee fares no better.

▮▮▮▮ "Under Colorado law a judgment lien creditor whose lien has been recorded possesses rights identical to those of a bona fide purchaser for value. The judgment creditors lien attaches not only to the actual interest of the judgment debtor, but to the judgment debtor's apparent interest, as shown by recorded documents." *Mooring v. Brown,* 763 F.2d 386, 387 (10th Cir.1985) (internal citations omitted); *see also, Wedman v. Carpenter,* 65 Colo. 63, 173 P. 57, 58 (1918) ("the lien of a judgment creditor stands upon the precise footing as that of an innocent purchaser or encumbrancer in good faith . . . ."). This point of the extent of the Trustee's rights under state law as a hypothetical lien creditor where the recorded UCC–1 would have put such a creditor on notice that Plaintiff believed it had an interest in all of the Debtor's property received scant treatment in the parties' briefs. Thus, the Court is unwilling to foreclose the possibility that Trustee may provide persuasive authority or argument on this point at a later stage of this litigation. However, the Court does find that Trustee has not met his burden to convince the Court that Trustee's powers will prevail over the right of reformation under state law such that granting of his Motion to Dismiss is appropriate.

▮▮▮▮ As stated above, dismissal of a case for failure to state a claim is an extreme measure. When all doubts are resolved in favor of the claimant under the liberal federal rules of pleading, it will be rare indeed that this Court grants such a motion. But, by the same token, reformation of a written agreement is an extreme and unusual event as well. The court in *Boyles Bros. Drilling Co. v. Orion Industries,* 761 P.2d 278 (Colo.Ct.App.1988) stated that "[r]eformation is an appropriate remedy when the evidence *clearly and unequivocally* shows that an instrument does not express the true intent or agreement of the parties." *Id.* at 281 (emphasis added). In addition, "[a]n essential prerequisite to a court's power to reform a contract on the ground of mutual mistake is the existence of a prior agreement that repre-

sents the actual expectations of the parties and provides the basis upon which a court orders reformation." *Continental Western Ins. Co. v. Jim's Hardwood Floor Co., Inc.* 12 P.3d 824, 827 (Colo.Ct.App.2000) (citing *Maryland Casualty Co. v. Buckeye Gas Products Co.,* 797 P.2d 11 (Colo.1990)). A claim of "mutual mistake requires that both parties must 'labor under the same erroneous conception in respect to the terms and conditions of the instrument.'" *Maryland Cas. Co. v. Buckeye Gas Products Co., Inc.,* 797 P.2d 11, 13 (Colo.1990) (quoting *Smith v. Anderson,* 121 Colo. 175, 214 P.2d 366, 370 (1950)). Thus, ultimately prevailing on a claim of mutual mistake is a daunting task that requires a very much heightened standard of proof such that the mistake is proven by clear and unequivocal evidence.

The Court has reviewed affidavits submitted in support of Plaintiff's Motion for Summary Judgment. Such affidavits fall short of meeting the evidentiary standard required for reformation.

In accordance with the above and foregoing, it is

**ORDERED** that Defendant's Motion to Dismiss is hereby DENIED; it is also

**ORDERED** that Plaintiff's Motion for Summary Judgment is hereby DENIED.