In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3905

IN RE:

EQUIPMENT ACQUISITION RESOURCES INC.,

*Debtor.*

FIRST PREMIER CAPITAL LLC n/k/a COMMEND
CAPITAL LLC,

*Appellant,*

*v.*

REPUBLIC BANK OF CHICAGO and WILLIAM A. BRANDT, JR.,
acting solely in his capacity as Plan Administrator for
Equipment Acquisition Resources Inc.,

*Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 C 6249—**Elaine E. Bucklo**, *Judge.*

ARGUED MAY 24, 2012—DECIDED AUGUST 9, 2012

Before CUDAHY, KANNE, and HAMILTON, *Circuit Judges*.

CUDAHY, *Circuit Judge.*   This is a case about the ap-
proval of a settlement plan that could potentially prej-

udice the litigation stance of a third party. Equipment Acquisition Resources, Inc. (EAR) was a corporation engaged in the sales and service of semiconductor manufacturing equipment. EAR defrauded various creditors in what was apparently a Ponzi scheme. The company's illegal activity included tricking banks into financing non-existent or grossly overvalued equipment and pledging certain pieces of equipment multiple times to different creditors. After the fraud was discovered, EAR filed for bankruptcy. As the Chief Restructuring Officer, William A. Brandt decided to abandon a portion of EAR's assets; then, acting as the plan administrator, he undertook litigation on behalf of the company to pay its unsecured creditors. First Premier Bank is EAR's largest creditor. First Premier is concerned that another creditor, Republic Bank of Chicago (Republic), is working in concert with Brandt to enlarge Republic's secured interest in EAR's assets.

The present case concerns five equipment leases running between EAR and Alliance Commercial Capital (Alliance) that granted Alliance a secured interest in EAR's equipment. Alliance filed UCC financing statements with the Illinois Secretary of State perfecting its security interests in the leases and other personal property.

Shortly thereafter, Alliance assigned all five leases to Republic Bank of Chicago. Republic and EAR amended the leases, providing that EAR would pay down part of the leases (approximately $4.6 million), EAR would give a blanket security interest in all its assets to Republic and Republic would forebear on claims it had against

EAR. However, the amendment had a typographical error (a "typo"), incorrectly giving Republic a security interest in Republic's own assets, rather than EAR's assets. Republic filed UCC financing statements claiming to have a blanket lien on EAR's assets.

EAR's fraud against its creditors was eventually discovered and Brandt was appointed as the company's Chief Restructuring Officer. Upon learning that the equipment stored by EAR was both grossly overvalued and subject to multiple liens, Brandt decided to abandon the EAR Estate's interest in that equipment. The abandoned equipment was auctioned. Based on its understanding that it has a blanket lien on EAR's assets, Republic claims the largest share of the auction proceeds. The matter is currently being litigated in the Circuit Court of Cook County, Illinois, by nearly all of EAR's creditors ("the Cook County Litigation"). First Premier is a party in that suit.

After abandoning its interest in the equipment, EAR began to pursue its litigation plan. EAR filed an adversary action against its outside auditors, VonLehman & Company and Brian Malthouse, in Bankruptcy Court for accounting malpractice as a result of their failure to recognize EAR's fraudulent dealings. EAR earlier tried to settle this case and bar creditors from pursuing claims against the outside auditors, but, due to the objections of the creditors, the bankruptcy court denied this request. Subsequently, as EAR continued to pursue its litigation plan, it filed an adversary action against Republic. EAR sought to avoid and recover the $4.6 million transfer to Republic that occurred as part of

the lease modification agreement. Additionally, EAR sought declaratory relief against Republic's blanket lien claim and an injunction preventing Republic from suing the auditors.

Several months later, Brandt submitted a Motion to Approve Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure with Republic (the "Settlement Motion") to end the EAR-Republic adversary action. The settlement called for a continuation of the two parties' suits against auditor VonLehman, a divvy of any proceeds from those suits and a retroactive modification of the earlier Republic blanket lien transfer to correct the typo to reflect that Republic has a blanket lien on EAR's assets rather than Republic's.

First Premier objected to this settlement, arguing that (1) EAR and Republic could not, under *In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592 (7th Cir. 1986), retroactively reform a fatal defect in the earlier lease amendment; (2) Republic was attempting to bolster its case in the Cook County Litigation in violation of Brandt's duty to EAR's creditors; and (3) the Settlement Motion did not provide an analysis indicating that the settlement was in the best interests of the creditors.

The bankruptcy court approved the Settlement Motion, finding that reformation of the lease was at least possible and that the settlement would avoid expensive litigation for the estate. The court specifically noted that its approval order was not intended to resolve whether Republic in fact had a lien on the assets involved in the Cook County Litigation. Then First Premier appealed to

the district court. The district court affirmed: distinguishing *Martin Grinding*, and finding that EAR could have potentially suffered an adverse judgment had EAR not entered into the settlement with Republic. First Premier appeals.

The district court had jurisdiction pursuant to 28 U.S.C. § 158(a)(1). This court has jurisdiction under 28 U.S.C. § 1291. We review a district court's approval of a settlement for abuse of discretion.[1]

## I.

Republic's original lease amendments contain typographical errors relating to the collateral securing an interest in *Republic's* assets rather than *EAR's*. Section 9-203 of the Uniform Commercial Code (UCC) provides that "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." 810 Ill. Comp. Stat. 5/9-203(a) (2009). This interest will be enforceable against third parties with respect to the collateral if the "debtor has authenticated a security agreement that provides a description of the collateral." 5/9-203(b)(3)(A) "A security interest attaches

---

[1] We reject First Premier's argument that the Settlement Approval Order was actually an appeal from a claim objection. First Premier's objection to the Settlement Motion did not state that it was making an objection to Republic's claim. Further, as will be made clear below, the Settlement Motion did not award Republic a secured claim, so a challenge to such a motion may not properly be interpreted as an objection to a claim.

only if a signed security agreement properly describes collateral." *In re Sarah Michaels, Inc.*, 358 B.R. 366, 377 (Bankr. N.D. Ill. 2007). These typographical errors in the description of the collateral created a large problem for Republic, which feared its supposed secured interest would not attach. As part of the settlement agreement, the parties agree to reform the lease agreement to correct this error.

First Premier argues that *Martin Grinding* precludes the reformation proposed by Republic and therefore the bankruptcy court erred in approving the settlement. However, First Premier misunderstands the legal posture of the bankruptcy court and the application of the holding of *Martin Grinding*.

*Martin Grinding* involved the inadvertent omission of specific classes of collateral from the security agreement. There, the creditor loaned funds to the debtor in exchange for a security interest in the debtor's machinery, equipment, furniture, fixtures, inventory and accounts receivable. 793 F.2d at 593. Although the parties did not include "inventory" or "accounts receivable" in the description of the collateral in the security agreement, the missing items were included in other loan documents. *Id.* at 593-94. However this court held that even though the parties made a mutual mistake and parol evidence supported their claimed intent to include the omitted items, the unambiguous security agreement, as written, controlled. *Id.* at 597-98. Accordingly, the creditor did not hold a security interest in inventory or accounts receivable. *Id.* at 598. This court noted that this strict

outcome promotes confidence in the written terms of secured transactions and allows subsequent creditors to rely on the contents of security interest documents. *Id.* at 596-97. *Martin Grinding* stands for the notion that parol evidence may not alter an *unambiguous* secured transaction.

However, with respect to the present case there has been no ruling on the issue of reformation: here, the bankruptcy court merely noted that reformation was perhaps possible. The bankruptcy court did not issue a "precise determination of likely outcomes," precisely because doing so would defeat the purpose of compromising the claim. Instead, the bankruptcy court needed only to consider the *possibility* of an adverse outcome for the estate in litigation with Republic.

There are several differences between *Martin Grinding* and the instant case indicating that a positive outcome for EAR in its Republic litigation is not guaranteed. Further, the present case does not involve the omission of a class of collateral in a security agreement, as in *Martin Grinding*, but instead involves a typo as to the source of collateral in a lease modification agreement in the context of a settlement. In fact, unlike the agreement in *Martin Grinding* the typo here renders the description of the collateral in the modification agreement between Republic and EAR completely ineffective. The agreement at issue in *Martin Grinding* unambiguously secured certain collateral; it listed several classes of collateral that constituted security, only "inventory" and "accounts receivable" were omitted from this description. 793 F.2d

at 593. Despite these two missing classes of collateral, the agreement was still effective—it still made sense and successfully conferred a security interest in the listed classes of collateral to the other party. On the other hand, the security interest clause in the modification agreement between Republic and EAR is not effective. This clause purports to indicate that EAR has the authority to grant a security interest in property it does not own, and that this security interest is conveyed from Republic to Republic. Not only is this conveyance impossible, it does not make sense, and unlike the agreement in *Martin Grinding* it cannot stand on its own as an unambiguous conveyance.

It is also worth noting that the *Martin Grinding* court specifically relied on the fact that the agreement at issue there was unambiguous. *Id.* at 595. Consequently, it never determined whether an *ambiguous* security agreement could be reformed to correct an error, which is the issue at hand.

Further, there are public documents reflecting the understanding between EAR and Republic to the effect that Republic indeed has a blanket security interest. In contrast, the parties in *Martin Grinding* disagreed as to the scope of the creditor's security interest. There the creditor sought to challenge with parol evidence the debtor's understanding of the unambiguous security agreement. 793 F.2d at 593-94. The court in *Martin Grinding* made it clear that the reason it was not allowing parol evidence to enlarge the security agreement was to prevent confusion—to ensure that subsequent creditors

had adequate notice of what was at stake. *Id.* at 596-97. Here there is much less chance that reformation would lead to creditor confusion. EAR and Republic agree that the typo in the original modification agreement was contrary to the intent of the contracting parties, and all other public documents support this understanding.

Finally, and perhaps most importantly, *Martin Grinding* does not deal with a Rule 9019 settlement. *Martin Grinding* is a contest between a creditor and a debtor. The case here is not so simple. Given the different context of *Martin Grinding*, there is no direct parallel between the two cases. The context precludes any clear application of one case to the other.

This preserves the possibility that a reasonable jurist might find *Martin Grinding* to control in an appropriate circumstance. The basis of EAR's claim might have been reformed in litigation. Because it is plausible that the estate might have lost in the EAR-Republic litigation and because the settlement otherwise benefitted the estate, neither the bankruptcy court nor the district court abused its discretion in approving the settlement.

First Premier argues that the settlement is not in the best interest of the estate and therefore never should have been approved. Yet, the bankruptcy court noted that the settlement "puts to rest what could be very expensive litigation between [the EAR Estate] and [Republic]." Brandt's business judgment appears sound in this respect—avoiding protracted and expensive litigation

will protect the payout to unsecured creditors, and the bankruptcy court acted reasonably to agree.

## II.

First Premier argues that the settlement unacceptably gives Republic an advantage in the Cook County Litigation. The argument is supported by the fact that the bankruptcy court's order does purport to reform the lease agreements. First Premier is obviously concerned that Republic will introduce the order as proof of its claim to a blanket lien on the equipment proceeds at issue in the Cook County Litigation. At first glance it may appear that Brandt has settled the EAR Estate's differences with Republic by, in effect, awarding Republic some of First Premier's money. Indeed, the EAR Estate no longer has any interest in the abandoned assets at issue in the Cook County Litigation, furthering the impression that EAR is settling with someone else's money.

Such an outcome would obviously be welcome to Brandt and Republic and unacceptable to First Premier. However, the bankruptcy court specifically noted that it was not reaching the merits of the underlying asset dispute. "Since it is without prejudice to any of the contentions the parties may raise in other litigation in other fora in which the state or some other court may take a different view whether or not the amendments could be appropriately reformed," there was no final determination on the issue of reformation. The text of the order does not indicate the limited nature of the bank-

ruptcy court's approval. Instead, the court noted that rather than redrafting the order, the parties should "provide some business to the worthy certified short-hand reporter. She'd provide a transcript of my oral findings and conclusions." The bankruptcy court was thus interested in moving the proceedings along in the interest of ensuring that unsecured creditors would be paid "as quickly as possible."

It is clear that the bankruptcy court was walking a very fine line. The court approved the settlement in order to "get money in the estate as quickly as we can so dividends can be paid under the liquidating plan." But the settlement, at Republic's insistence, contained a retroactive reformation that if granted could potentially negatively impact the rights of third parties. Rather than require a renegotiation of the settlement, the bankruptcy court approved the settlement while creating a record making it clear that the issue of actual reformation was not determined. The court's approval of the settlement does not award Republic a secured claim but skirts the issue altogether.

The bankruptcy court's issuance of an order that contains language purporting to reform the lease agreements and simultaneously disclaiming the consequences of that language may be perplexing. However, the representations of Republic at oral argument that the settlement will not be used to limit the litigation positions of First Premier or any other third party are reassuring. The settlement does not reform the lease modifications. It merely stands as an agreement between the two parties

that the lease modification agreements are flawed with a typo.[2] Republic does not claim that this agreement binds third parties.

Republic agreed at oral argument that First Premier could not be bound by the settlement's reformation language. Further, Republic assured us that any proof of claim filed in the Cook County Litigation "will not contain a copy of the [bankruptcy court']s order or the transcript or make any reference to it."

Despite First Premier's concern about the settlement agreement between EAR and Republic, it has not been prejudiced by the agreement in any way. For the foregoing reasons the district court did not abuse its discretion in affirming the bankruptcy court's decision and we affirm.

---

[2]   During oral argument Republic indicated that it believed the settlement could be used as evidence of a mutual mistake of fact in the original lease amendment. We noted that such an agreement would seem to have little evidentiary standing since it constitutes hearsay.